COMMUNITY TITLE COMPANY
OF ST. LOUIS, Respondent,

v.

LIEBERMAN MANAGEMENT
COMPANY, et al,
Appellant.

No. 58494.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 20, 1991.

David G. Dempsey, Thomas Michael Blumenthal, Eileen J. Markey, St. Louis, for appellant.

Richard A. Wunderlich, John Michael Hessel, Duane Coleman, St. Louis, for respondent.

CARL R. GAERTNER, Chief Judge.

Lieberman Management Company, et al., (Lieberman) appeal from an order of summary judgment on their abuse of process counterclaim and denial of attorney's fees arising from an interpleader action filed by Community Title Company of St. Louis, Inc., (Community) to determine the proper disbursement of funds from a sale of property. We affirm.

The appeal is complicated by reason of the multiplicity of parties and the complexity of the underlying financial transactions. As garnered from the numerous depositions before the trial court, the facts material to the single issue presented by this appeal are not in dispute.

Alan and Harold Lieberman are general partners of two limited partnerships, Clarkson Square Associates, L.P. (CSA) and Clarkson Square II, Ltd., L.P. (CS II) and the sole limited partners of CS II. CSA had, in addition, fifteen investor limited partners. The two limited partnerships owned and operated adjacent tracts which together are known as Clarkson Square Shopping Center.

On May 24, 1989, Community agreed to act as intermediary in the sale of Clarkson Square Shopping Center by the owners, CSA and CS II, to the buyers, Caplaco Four, Inc., and Caparco One, Inc., (Caplaco/Caparco). The sale was structured as a "like-kind" exchange for tax purposes. Caplaco/Caparco agreed to pay $3,829,262.11 to Community as an intermediary buyer-seller and Community would then pay the funds by wire transfer to CSA and CS II as provided by the sale contract.

Community had issued a commitment for title insurance underwritten by Stewart Title Guaranty Company (Stewart). Stewart's insured closing letter assured Caplaco/Caparco that the payment to Community would be properly disbursed to CSA and CS II. However, Stewart required verification that all limited partners of CSA consented to the sale of the shopping center. The attorney for the general partners informed Community that they did not want to go to the limited .partners to get their consent but would provide an opinion letter stating that the general partners had authority to make the conveyance without the consent of the limited partners.

The contracts between Community and CSA and CS II provided that Community would deliver Federal Reserve Wire Transfers in the amounts of the purchase price to the respective limited partnerships. At the closing on July 13, 1989, the contracts were modified by crossing out the wire transfer provision and writing in "St. Louis Bank Cashier's checks," as requested by Harold Lieberman and his attorney. However, it was too late to obtain a cashier's check, and Mr. Kenney, Community's president, suggested that the escrowed funds be wire transferred as originally provided by the contract the next day. At this point, Harold Lieberman instructed Community to wire transfer the $3,334,411.33 due to CSA to a Lieberman Management Company account and the $511,072.46 due to CS II to his attorney for deposit in an account in H. Lieberman's name as escrowee for CS II. By the time negotiations concluded, the Federal Reserve Wire was closed and Harold Lieberman instructed Community to invest the proceeds overnight.

The directions to pay the purchase money to entities other than the selling partnerships concerned Community's officers. They consulted Community's attorneys regarding the conflict between the directions received from Harold Lieberman and the provisions of the partnership agreements relating to the handling of partnership funds. They were also aware of the fact that Stewart had potential claims against the Lieberman corporations because of mechanics liens filed by subcontractors in Lieberman developments other than Clarkson Square. Accordingly, they also consulted with officers of Stewart.

The next day Community filed an interpleader action and deposited the purchase money in the registry of the court. In addition to the partnerships and the individual members thereof, the interpleader petition named as defendants having a claim against the funds Lieberman Management Company, by reason of the direction of Harold Lieberman to pay a portion of the purchase price to that corporation, and Stewart, by reason of its claims against Lieberman Management Company and the Lieberman brothers.

On July 15, 1989, the day after the interpleader action was filed, Harold Lieberman sent a letter to all the CSA limited partners requesting that they consent to the transfer of the funds to the Lieberman Management Company. None of the limited partners consented. On December 11, 1989, the partners of CSA entered into a settlement agreement which specified the manner in which the funds were to be disbursed. In January, 1990, appellants filed a motion for summary judgment supported by affidavits of all the CSA limited partners, praying that the funds be paid from the registry of the court to CSA and CS II. The motion also requested that Community be required to pay appellant's attorneys fees. On January 26, 1990, Community filed its motion for summary judgment on the counterclaim. These motions were taken under submission after a hearing on February 5, 1990.[1]

The trial court entered a nunc pro tunc order on May 18, 1990 which modified the amended order of March 9, 1990 entered after the court vacated its original order of February 13, 1990. As to the Lieberman defendant's motion, the May 17, 1990 order directed: (a) $3,318,189.65 plus interest be paid to CSA; (b) $511,072.46 plus interest be paid to CS II; (c) "the filing of the interpleader by Community was justified and proper. Community is relieved and discharged from any and all liability with respect to the funds that have been interpleaded in this action." The court granted Community's motion for summary judgment against the Lieberman counterclaim for abuse of process, determining that Community was within its rights in filing the interpleader. It denied Community's motion for summary judgment on counterclaim Counts II–IV because issues may remain concerning material facts. The court denied with prejudice both Community's and Lieberman's request for attorneys' fees. The court found no just reason for delay and designated the order as final judgment. Rule 74.01(b).

Lieberman appeals the trial court's summary judgment of the abuse of process counterclaim and denial of attorneys' fees.

Summary judgment is appropriate when "no theory within the scope of the pleadings, depositions, admissions, and affidavits filed would permit recovery and the moving party is entitled to recovery as a matter of law." *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). "Summary judgment is not precluded if the 'facts' alleged to be in dispute are actually differing opinions of the parties of the legal effect of documents or actions which determine their respective rights." *Hayes v. Hatfield,* 758 S.W.2d 470, 472 (Mo.App.1988) quoting *Roberts Fertilizer, Inc. v. Steinmeier,* 748 S.W.2d 883, 887 (Mo.App.1988).

A pleading alleging abuse of process must set forth facts that establish that: "(1) the present defendant made an illegal,

---

1. Various other motions were also taken under submission at this time. The parties agreed that the court's disposition of the Lieberman and Community motions would render the others moot.

improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Ritterbusch v. Holt,* 789 S.W.2d 491, 493 (Mo. banc 1990); *Stafford v. Muster,* 582 S.W.2d 670, 678 (Mo. banc 1979); *National Motor Club of Missouri v. Noe,* 475 S.W.2d 16, 24 (Mo.1972).

■ Abuse of process does not arise from regular use of process, even if undertaken with ulterior motives. It refers to "some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process." *Stafford,* 582 S.W.2d at 678, citing W. Prosser, Torts, § 121 (4th Ed. 1971) and *Moffett v. Commerce Trust Co.,* 283 S.W.2d 591, 599 (Mo.1955), *cert. denied,* 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861 (1956). Defendant must have some ulterior purpose and act willfully in the improper use of process. "The ulterior purpose may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive." *Moffett,* 283 S.W.2d at 599, again quoting Prosser. The test requires determining whether the process has been used to accomplish some unlawful or collateral end to which the other party could not be legally compelled. *Owen v. Owen,* 642 S.W.2d 410 (Mo.App.1982).

Lieberman argues that Community "maliciously" and "without probable cause" filed the interpleader action for a "collateral purpose," to achieve the unlawful end of retaining control of the funds "in order to extract payment of money" and "perfect an attachment otherwise unavailable through lawful means" to settle the claim of Stewart against Lieberman. It claims actual damages resulting from the loss of the use of the funds. Community denies the allegations and contends that it was justified in filing the interpleader action as a matter of law.

■ We find no support in the evidence presented to the trial court for appellant's contention that in filing the interpleader action Community engaged in an improper, perverted or unwarranted use of process. The purpose of an interpleader action is to adjudicate the distribution of funds held by a disinterested stakeholder who is faced with conflicting and competing claims regarding disbursement of the fund. *Brady v. Ansehl,* 787 S.W.2d 823, 825 (Mo.App.1990); *General American Life Insurance Company v. Wiest,* 567 S.W.2d 341, 345 (Mo.App.1978). We need not decide whether Community's argument that its position was that of an escrow agent subject to fiduciary obligations or appellant's contention that Community was merely a seller of real estate is correct in order to conclude that Community, as the intermediary between the owners and the ultimate purchaser of Clarkson Square Shopping Center, was a disinterested stakeholder of the purchase money as the various components of the complex transaction were carried out. Community came into possession of funds which under the contracts were to be paid to the two limited partnerships. However, Community was directed by the general partners thereof to pay these funds to other entities. The general partners had submitted an opinion letter from their attorney that the consent of the limited partners was not required to complete the transaction. That there was a conflict between the directions of the general partners and the interests of the limited partners was obvious, particularly in the light of Community's knowledge of the financial difficulties of the various Lieberman Enterprises. Faced with the choice between disregarding the directions of the general partners who were purporting to act on behalf of the partnerships, or jeopardizing the interests of the limited partners who were ultimately entitled to the funds and who, through the actions of the Liebermans, were kept in the dark concerning the transaction, Community chose to deposit the money into the registry of the court where the interested parties could resolve the conflict. This is an appropriate use of interpleader and, as found by the trial court, was "justified and proper." This conclusion is bolstered by the evidence that none of the limited partners consented to the payment of the funds to the Lieber-

man Management Company and that almost six months elapsed before the differences between the general partners and the limited partners regarding disbursement of the funds were resolved. Indeed, some of the limited partners viewed the interpleader action as essential to the preservation of their interests.

We find the interpleader was justified and proper without regard to Community's contention that it considered Stewart to be a claimant to the funds or to appellant's argument that the sole purpose of the interpleader action was to provide a vehicle for Stewart to attach funds which it claimed were owed by the Lieberman brothers. Regardless of Community's motive, it did nothing more than pursue its interpleader action to its authorized conclusion. In so doing, Community incurred no liability for abuse of process. *Kopp v. Franks*, 792 S.W.2d 413, 424 (Mo.App. 1990); *Pipefitters Health and Welfare Trust v. Waldo R. Inc.*, 760 S.W.2d 196, 198–99 (Mo.App.1988).

Nor are we persuaded by the Lieberman's argument that since they were the only limited partners of CS II, Community could not have been exposed to multiple claims for that portion of the funds due to that partnership. Therefore, the Lieberman's argue, the inclusion of the CS II funds in the interpleader demonstrates Community's ulterior motive in instituting the action. This argument overlooks the fact that although two tracts were sold, each owned by a different entity, there was but a single sale of the entire shopping center. If a clear title to both tracts could not be conveyed the whole transaction would collapse. Indeed, in their pleadings the Liebermans sought recision of the sale in its entirety. Moreover, "[a]buse of process will not lie where, even though the motive is bad, the use of the process was within the right of the defendant." *Missouri Highway and Transportation Commission v. Commerce Bank of Kansas City*, 763 S.W.2d 172, 177 (Mo.App.1988). The evidence is devoid of any indication that the interpleader process was perverted or used for any purpose other than the proper, legitimate and authorized purpose of determining the appropriate disbursement of the funds in the hands of Community.

The basis for the Lieberman claim to an award of its attorneys fees is that they were wrongfully involved in groundless litigation. As we have demonstrated, this is an unsubstantiated premise. The trial court did not err in denying any award of attorneys fees.

Judgment affirmed.

SMITH, P.J., and SATZ, J., concur.