Howard SIMPSON, Appellant,

v.

INDOPCO, INC., d/b/a National Starch and Chemical Company, Inc., Respondent.

No. WD 57149.

Missouri Court of Appeals, Western District.

April 4, 2000.

As Modified May 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court May 30, 2000.

Application for Transfer Denied June 27, 2000.

Jerrold Kenter, Kansas City, for appellant.

Mark Eugene Johnson, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., ULRICH, J., and SMART, J.

ULRICH, Judge.

Howard Simpson appeals from the trial court's grant of judgment notwithstanding the verdict (JNOV) in favor of Indopco, Inc., d/b/a National Starch and Chemical Company, Inc. (National Starch) on Mr. Simpson's malicious prosecution claim. Mr. Simpson contends that National Starch failed to provide accurate, complete and potentially exculpatory information to the Fraud Unit of the Division of Workers' Compensation, which caused criminal charges to be filed against Mr. Simpson. The judgment of the trial court is affirmed.

## Facts

Mr. Simpson is an employee of National Starch. He filed two workers' compensa-

tion claims arising out of a 1992 recurrent hernia and a 1993 back injury. His hernia was first diagnosed and treated in 1991 by Dr. Lawrence Evans. National Starch paid for all of Mr. Simpson's medical treatment related to the hernia repair. In 1992, the hernia recurred and Dr. Evans again treated Mr. Simpson. Dr. Evan's medical records from the 1992 visit stated that Mr. Simpson's hernia recurred when "he was working on a tractor and had a flat tire on his tractor and had to work on it and since that time has developed a bulge in the left which hurts when he gets up and down [sic] his leg."

On September 3, 1993, Mr. Simpson reported to his supervisor that he experienced pain in his lower back while he was working shoveling wet feed at National Starch. The supervisor filled out an internal National Starch injury report at that time. Mr. Simpson did not seek medical treatment at that time but sought medical treatment for his back from his personal physician, Dr. Lester McDonald, approximately four weeks later. Dr. McDonald's medical records stated that Mr. Simpson complained of back pain that resulted from lifting and building a farrowing house. A few days later Mr. Simpson went to the emergency room due to back pain. The medical records from the hospital indicated that Mr. Simpson reported he was lifting a gate at his farm and developed a sudden onset of pain.

National Starch's worker's compensation case manager, Nurse Jim French, spoke on his car phone to Mr. Simpson after the worker's compensation claim for the back injury was filed. His notes reported that Mr. Simpson first noticed pain when working on the farrowing barn for his hogs. Nurse French arranged an appointment for Mr. Simpson to be seen by Dr. Americo Ramos, National Starch's company physician. After examining Mr. Simpson and reviewing Mr. Simpson's medical records, Dr. Ramos drafted a letter indicating that Mr. Simpson had hurt his back several times, twice by working on his farm. Mr. Simpson was working with his hogs on one of those occasions and was lifting a gate at

his farm the second time. National Starch also arranged for Mr. Simpson to see Dr. Michael Poppa, who also reported that Mr. Simpson's right hip, back, and leg began hurting him while working on the farm with his wife.

After reviewing Mr. Simpson's worker's compensation claims for the hernia and back injury, including the various medical records from physicians who treated or saw Mr. Simpson, National Starch deposed Mr. Simpson. After Mr. Simpson denied telling his physicians that he was injured while working on his farm during his deposition, National Starch deposed the physicians who saw Mr. Simpson. In February 1995, National Starch filed a complaint pursuant to section 287.128.6, RSMo 1994, with the Fraud Unit of the Missouri Division of Workers' Compensation (Fraud Unit) and forwarded the following documentation along with the complaint: Mr. Simpson's deposition, the depositions of three of the physicians who treated or saw Mr. Simpson, the medical records from the three physicians and the hospital, the report of National Starch's reviewing physician, and the report by National Starch's worker's compensation case manager. National Starch, however, did not send National Starch's internal company injury report completed by Mr. Simpson's supervisor on September 3, 1993, the group health insurance claim form filled out by Mr. Simpson's wife, or Dr. Ramos' patient intake form to the Fraud Unit. These documents supported Mr. Simpson's claim that his injuries were work related. National Starch also did not list Mr. Simpson's supervisor and one of Mr. Simpson's co-workers as witnesses on the fraud complaint form. Mr. Simpson's supervisor and co-worker would have testified to Mr. Simpson's September 3, 1993, reported work-related back injury.

The Fraud Unit thereafter referred the case to the office of the Missouri Attorney General. The Attorney General filed a misdemeanor information charging Mr. Simpson with four counts of knowingly

making a false material representation on May 3, 1995, for the purpose of obtaining worker's compensation benefits. National Starch forwarded a copy of the September 3, 1993, injury report, filed by Mr. Simpson's supervisor, to the Assistance Attorney General on May 8, 1995. The Assistant Attorney General then filed an Amended Information charging Simpson with four courts of misdemeanor worker's compensation fraud.

The criminal charges against Mr. Simpson were tried as a non-jury case, and Mr. Simpson was found not guilty on all counts. Mr. Simpson thereafter filed the malicious prosecution action against National Starch. At the close of plaintiff's evidence, and again at the close of all the evidence, National Starch moved for a directed verdict on the malicious prosecution count. The court overruled both motions. At the close of the trial, the jury returned a verdict against National Starch and in favor of Mr. Simpson in the amount of $300,000 in actual damages. The trial court subsequently granted National Starch's motion for JNOV. This appeal followed.

## Standard of Review

■ A trial court's *judgment non obstante veredicto* (JNOV) will be affirmed only if the plaintiff failed to make a submissible case. *Faust v. Ryder Commercial Leasing & Services,* 954 S.W.2d 383, 387 (Mo.App. W.D.1997)(citing *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996)). A submissible case requires substantial evidence for every fact essential for liability. *Davis v. Board of Educ. of City of St. Louis,* 963 S.W.2d 679, 684 (Mo.App. E.D.1998). Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case. *Id.* Whether evidence in a case is substantial and whether the inferences drawn are reasonable are questions of law. *Id.* In determining whether a plaintiff has made a submissible case, the evidence is viewed in the light most favorable to that plaintiff and the plaintiff is given the benefit of all

reasonable and favorable inferences to be drawn from the evidence. *Id.* The evidence and inferences must establish every element and not leave any issue to speculation. *Id.*

## Point on Appeal

■ Mr. Simpson contends that the trial court erred in sustaining National Starch's motion for JNOV because he made a *prima facie* case for malicious prosecution in that National Starch knowingly failed to provide accurate, complete and potentially exculpatory information to the Worker's Compensation Fraud Unit.

■ For a malicious prosecution action to succeed, a plaintiff must plead and provide "strict and clear proof" of six elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation of that prosecution by the defendant; (3) termination of the proceedings in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) that defendant's conduct was actuated by malice; and (6) damage to the plaintiff. *Integra a Hotel and Restaurant Co. v. Ragan,* 887 S.W.2d 731, 732 (Mo.App. W.D.1994)(citing *Burnett v. Griffith,* 769 S.W.2d 780, 784 n. 2 (Mo. banc 1989); *Sanders v. Daniel Intern. Corp.,* 682 S.W.2d 803, 807 (Mo. banc 1984)). All six elements must be proved, and a plaintiff's failure to prove any one of the elements results in the failure to make a submissible case of malicious prosecution. *Thompson v. Wal–Mart Stores, Inc.,* 890 S.W.2d 780, 782 (Mo.App. W.D.1995). Actions in malicious prosecution have never been favorites of the law. *Sanders,* 682 S.W.2d at 806. Sound public policy dictates that the law should encourage the uncovering and prosecution of crime and any policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general. *Id.* Courts recognize malicious prosecution as an action tending to dilute the public policy of encouraging persons having knowledge of possible crimes to cooperate with public officers. *Id.*

The fourth element of a malicious prosecution action that the plaintiff must prove is the absence of probable cause to warrant referral to the prosecutor by the defendant. In determining whether probable cause existed in this civil malicious prosecution action, the question is whether Mr. Simpson established that National Starch lacked probable cause to report the claim to the Fraud Unit which instigated the prosecution by the Attorney General.

The probable cause to initiate criminal proceedings sufficient to rebut a claim of malicious prosecution is "reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious man in his belief that the person accused is guilty of the offense charged." *Thompson*, 890 S.W.2d at 782. MAI 5th 16.05 [1996] provides that "reasonable grounds" as used in malicious prosecution instructions means "the existence of facts which would cause an ordinarily careful person to believe plaintiff was guilty of the offense charged." Where the facts pertaining to the issue are not in dispute, the determination of whether probable cause existed is a question of law for the court, and not a question of fact for the jury. *Thompson*, 890 S.W.2d at 782.

In *Thompson*, an employee brought a malicious prosecution action against his former employer for instituting criminal proceedings against him for stealing. The employer instigated the charges based upon videotape showing the employee removing currency from cash register, hiding it and surreptitiously placing it in his pocket, without any indication in the next four hours that the employee returned the money or change to the register. *Thompson*, 890 S.W.2d at 781. This court held that, as a matter of law, the former employer had probable cause to institute criminal proceedings against the employee. *Id.* at 783.

In this case, the medical records of three physicians and a hospital recorded Mr. Simpson's farm activities as the source of his injuries. These same medical providers made statements, in depositions taken by National Starch's attorney, that they understood that Mr. Simpson's injuries were related to farming-related activities. Mr. Simpson's medical records and the statements of his treating physicians, combined with Mr. Simpson's claim for worker's compensation benefits for those same injuries, constituted reasonable grounds for suspicion sufficient to warrant National Starch's belief that Mr. Simpson was guilty of the offense charged.

As Mr. Simpson failed to establish the want of probable cause as an element of his malicious prosecution action against National Starch for its reporting Mr. Simpson to the Fraud Unit, the trial court did not err in granting National Starch's motion for JNOV. Since failure to prove the want of probable cause element of the malicious prosecution action is dispositive, whether the other elements were met in this case need not be addressed.

The judgment of the trial court is affirmed.

LAURA DENVIR STITH, P.J., and SMART, J., concur.