Christopher CROW, et al.,
Plaintiffs/Appellants,

v.

CRAWFORD & COMPANY, et al.,
Defendants/Respondents.

No. ED 90093.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 13, 2008.

Application for Transfer Denied
Aug. 26, 2008.

James M. Dowd, St. Louis, MO, for plaintiffs/appellants.

Peter B. Hoffman, Robert F. Chandler, Gerard T. Noce, Michael L. Young, St. Louis, MO, Steven P. Kuenzel, Washington, MO, for defendants/respondents.

CLIFFORD H. AHRENS, Judge.

Christopher Crow ("Mr. Crow") and Tonya Crow ("Mrs. Crow") (collectively "Appellants") appeal from the trial court's summary judgment in favor of defendants Cassens Transport Company ("Cassens"), Crawford & Company ("Crawford"), Tina Litwiller, and L. David Green on Appellants' claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, and discrimination under section 287.780 RSMo 2000.[1] Finding no error, we affirm.

Mr. Crow was employed by Cassens on February 7, 2001. Mr. Crow fell from a truck that day, sustaining injuries to his left elbow and left hand. On February 12, 2001, Mr. Crow called Kevin Nelson, the safety coordinator ("Safety Coordinator") for Cassens and told him that a day or so after his fall that his right shoulder began to hurt. Mr. Crow sought treatment for his injuries through Cassens. Mr. Crow's initial MRI was negative, but he received treatment until April 4, 2001, remaining off-work during this period. Dr. Nogalski released him to return to work as of that date. Mr. Crow did not immediately return to work, but rather contacted Safety Coordinator to express dissatisfaction with Dr. Nogalski, and to complain that his shoulder was getting worse. Safety Coordinator advised Mr. Crow to come in to work and see how things went, but Mr. Crow told him that he would report back to work on April 9, 2001, instead.

Cassens did not handle workers' compensation claims itself. Crawford had a contract with Cassens to administer workers' compensation claims made by employees of Cassens in Missouri. Litwiller handled those Missouri claims for Crawford, including Mr. Crow's claims for workers' compensation benefits stemming from the February 7, 2001, accident. Safety Coordinator reported his conversation with Mr. Crow of April 5, 2001, to Litwiller, who in turn contacted the safety director of Cassens, Bill Molter, regarding possible surveillance of Mr. Crow to determine whether he was truthful about his claimed injuries. Molter authorized Litwiller to use surveillance. The surveillance video ("video") of Mr. Crow was taken on April 6 and 7, 2001. It showed Mr. Crow engaged in a number of physical activities, including preparing and launching his boat in a public park. Mrs. Crow also appeared in the video of Mr. Crow. This appearance included film of her allegedly urinating while on or near a ramp at the public park's boat dock.

Mr. Crow returned to work at Cassens on April 9, 2001. He worked until May 14, 2001, when he returned to Dr. Nogalski with more complaints. Dr. Nogalski again took Mr. Crow off of work for additional treatment. Upon learning that Mr. Crow was again receiving treatment, Litwiller reviewed the video to see what Mr. Crow had been doing. Dr. Nogalski also informed her that Mr. Crow's subjective complaints were inconsistent with his medical evaluation of him. Dr. Nogalski thereafter viewed the video, and concluded that Mr. Crow displayed no sign of shoulder dysfunction, and issued a report releasing him to return to work. Litwiller received a copy of this report on May 30, 2001. Prior to receiving Dr. Nogalski's report,

1. Unless noted otherwise, all further statutory citations are to RSMo.2000.

Litwiller had also received a call from Mr. Crow's physical therapist, who expressed concerns about his negative attitude since he began therapy. Mr. Crow did not initially admit that he had been doing anything more extensive than some work around the house and going to therapy, although when questioned about his boat, he acknowledged having been out boating since he filed his workers' compensation claim.

Litwiller spoke with Molter. Based on his understanding of the reports and the video, Molter directed Litwiller to contact the attorney for Cassens, David Green regarding contacting the Missouri Workers' Compensation Commission Fraud Unit ("Fraud Unit"). Green contacted the Fraud Unit, described the situation, and asked if this were a matter for which the Fraud Unit would be interested. The Fraud Unit expressed interest, and consequently Green sent Mr. Crow's medical records to it, as well as the raw, unedited video. Green also provided the Fraud Unit with the name of Mr. Crow's supervisor and his telephone number. The Fraud Unit investigated the matter, and referred it to the Missouri Attorney General's Office. An assistant Attorney General for the State of Missouri, David Barrett ("Assistant AG"), conducted his own review of the materials that the Fraud Unit sent to the Missouri Attorney General's Office. This included the video, as well as Mr. Crow's statements to Safety Coordinator and Litwiller. Assistant AG did not rely on the written reports of those who made the videotapes of Mr. Crow, but rather the videos themselves. Assistant AG filed an information against Mr. Crow, charging him with two counts of misdemeanor workers' compensation fraud.

Mr. Crow was tried in September 2003. Mr. Crow's counsel moved for acquittal at the close of the State's case and at the close of the evidence. The trial court denied both motions, finding that there was a submissible case to the jury. The jury acquitted Mr. Crow of the charges.

Cassens continued to employ Mr. Crow. He did receive a "pending letter of investigation" based on a later injury incident, but was not otherwise disciplined or discriminated against. Cassens often issues such letters when employees do not timely file a report of a claimed injury or accident. Mr. Crow did not report the injury that resulted in the "pending letter of investigation" until seven days after the alleged accident.

Thereafter Mr. and Mrs. Crow filed their lawsuit against Cassens, Crawford, Green, and Litwiller for malicious prosecution, abuse of process, intentional infliction of emotional distress, invasion of privacy, conspiracy, and loss of consortium. All defendants filed motions for summary judgment, with memoranda in support, statements of undisputed material facts, and exhibits. Appellants filed a combined memorandum in opposition to the motions for summary judgment, as well as responses to the statements of facts, and a statement of additional material facts. Both sides thereafter filed additional responses. The trial court issued an order and judgment on July 2, 2007, granting summary judgment in favor of all of the defendants on their respective motions for summary judgment.

Appellants now appeal from this judgment.

 Our review of a summary judgment is essentially de novo. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). We "review the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all reasonable inferences which

may be drawn from the record. *Id.* We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and if no genuine issues of material fact exist. *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* A defendant may establish a right to judgment as a matter of law by showing any of the following: (1) facts that negate any of the elements of the claimant's cause of action; (2) the non-movant, after a reasonable period of discovery, has not and will not be able to produce sufficient evidence to permit the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts needed to support the movant's properly pleaded affirmative defense. *Id.* at 381.

■ Once a movant has established a right to judgment as a matter of law, the non-movant has the burden of showing that one or more of the material facts shown by the movant not to be in dispute is actually genuinely disputed. *Id.* The non-movant may not rest upon the allegations and denials of the pleadings, but rather must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial. *Id.* A genuine dispute is one that is real, not merely argumentative, frivolous, or imaginary. *Id.* at 382.

■ We note as a general observation that summary judgment is seldom appropriate in cases involving proof of elusive facts such as intent, motive, fraud, duress, undue influence, mental capacity and the like, which must almost always be proved by circumstantial evidence. *Estate of Heidt,* 785 S.W.2d 668, 670 (Mo.App.1990). However, where the non-movants have

made such comprehensive and broad admissions by a failure to respond to requests for admissions and/or by a failure to contradict a movant's affidavit in support of the motion for summary judgment by opposing affidavits, summary judgment is in order, and may be affirmed. *See id.*

■ In the present case, Appellants made a number of admissions by failing to contradict affidavits of the defendants. These admissions included statements of fact in various affidavits regarding the motive of Cassens in requesting Green to refer the matter to the Fraud Unit and in providing information to the Fraud Unit. Appellants also admitted, by failing to contradict, that the sole motivation of Litwiller and Crawford was the investigation of Mr. Crow's workers' compensation claim, and that the sole motivation of Green's conduct was the legal defense of that workers' compensation claim.

In their first point relied on, Appellants contend that the trial court erred in granting summary judgment in favor of the defendants because it "adopted defendants' proposed findings of fact verbatim" and improperly relied on legal conclusions in the defendants' affidavits and proposed findings of fact to find the absence of genuine issues of material fact on their claims.

■ There is nothing *per se* improper with a trial court adopting a party's proposed findings of fact and conclusions of law verbatim. *See State ex rel. Petti v. Goodwin Raftery,* 190 S.W.3d 501, 506 (Mo.App.2006); *Nolte v. Wittmaier,* 977 S.W.2d 52, 58 (Mo.App.1998). It is not a favored practice, but does not constitute reversible error in and of itself. *See id.* The question is whether the trial court improperly relied on legal conclusions in the defendants' affidavits and proposed findings of fact to determine that there

was no genuine issue of material fact in dispute.

What Appellants contend are "legal conclusions" are statements of fact regarding motive and intent. We note that it frequently is difficult to make a statement of fact, whether in an affidavit or a finding of fact, regarding a person's motive or intent that does not sound as if it were conclusory. Missouri has held that statements of motive or intent in affidavits were statements of fact that could support a trial court's grant of summary judgment. *See Central Missouri Electric Cooperative v. Balke*, 119 S.W.3d 627, 636–37 (Mo.App. 2003); *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 447–48 (Mo. App.2000). The statements of fact at issue in the present case are similar to those in *Balke* and *Thomas*. As noted previously, Appellants made a number of admissions, which included admissions of the statements of fact about motive and intent. Accordingly, these are summary judgment facts that establish that defendants had a motive or intent other than malice. Point denied.

In their second point relied on, Appellants assert that the trial court erred in granting summary judgment on Mr. Crow's malicious prosecution claim in that there was a genuine dispute of material fact as to whether the defendants instigated the prosecution of Mr. Crow. Appellants also argue that the trial court misapplied the law in finding a *prima facie* showing of probable cause was created when Assistant AG issued a sworn information in the prosecution of Mr. Crow, and also in finding that such a *prima facie* showing could not be rebutted. Appellants additionally aver that there was a genuine dispute of material fact as to whether the defendants "acted with malice in instigating and carrying out the prosecution" of Mr. Crow.

■ We note initially that malicious prosecution suits have never been favorites of the law. *Sanders v. Daniel International Corp.*, 682 S.W.2d 803, 806 (Mo. banc 1984). "[S]ound public policy dictates that the law should encourage the uncovering and prosecution of crime." *Id.* A policy that discourages people from reporting crime or assisting in prosecution would be both undesirable and detrimental to society. *Id.* (quoting *Cates v. Eddy*, 669 P.2d 912, 917–18 (Wyo.1983)). The nature of malicious prosecution actions has led courts to require "strict proof" of each element of the tort. *Id.*

■ There are six elements that a plaintiff must plead and prove to prevail in a malicious prosecution action: (1) the commencement of a prosecution against the plaintiff; (2) the instigation of the prosecution by the defendant; (3) the termination of the proceeding in plaintiff's favor; (4) lack of probable cause for the prosecution; (5) that defendant's conduct was motivated by malice; and (6) plaintiff was damaged as a result. *Integra–A Hotel and Restaurant Company v. Ragan*, 887 S.W.2d 731, 732 (Mo.App.1994). A plaintiff must prove all six of these elements, and the failure to prove any one of these elements results in the failure to make a submissible case of malicious prosecution. *Thompson v. Wal–Mart, Inc.*, 890 S.W.2d 780, 782 (Mo.App.1995). A defendant in a suit for malicious prosecution may establish a right to summary judgment by showing facts that negate any one of the plaintiff's elements. *Id.*

■ To instigate means " 'to stimulate or goad to an action, especially a bad action'; and that one of its synonyms is 'abet,' which 'means, in law, to aid, promote, or encourage the commission of an offense.' " *Snider v. Wimberly*, 357 Mo. 491, 209 S.W.2d 239, 242 (1948) (quoting

*State v. Fraker*, 148 Mo. 143, 165, *loc. cit.*, 49 S.W. 1017, 1022 (1899)). Instigation requires that there be some affirmative action by way of encouragement, advice, pressure, or the like in the institution of the prosecution. *Baker v. St. Joe Minerals Corp.*, 744 S.W.2d 887, 889 (Mo.App. 1988). Merely providing honest information from which a prosecution ensues is not instigation, although liability may arise from supplying false information to the prosecuting official. *Id.* The present matter is different from the cases cited by Appellants in that Defendants provided their suspicions and information to a state agency, which then determined that there appeared to be a substantial enough case against Mr. Crow that it passed the matter to the Missouri Attorney General's Office, in which Assistant AG independently reviewed the information and made the determination to issue a sworn information.

> [W]hen an agency official has sole authority to initiate the action, persons who have provided information to that official are not held to have initiated or taken an "active part" in initiating the action. The general rule is that an individual who merely provides facts concerning the conduct of another to an officer possessing the authority to issue charges is not liable for malicious prosecution.

*Davis v. Board of Education of the City of St. Louis*, 963 S.W.2d 679, 686 (Mo.App. 1998). Here, the undisputed facts show that Fraud Unit conducted an investigation, triggered by defendants it is true, but the director then made an independent determination, based on the findings of the Fraud Unit, to refer the matter to the

Missouri Attorney General's Office.[2] The undisputed facts also show that the Assistant AG made his own determination to proceed with the prosecution based on his review and investigation. None of the defendants instigated the prosecution of Mr. Crow.

■■■■■■■ This Court has defined "probable cause" for initiating prosecution as " 'reasonable grounds for suspicion, supported by circumstances in evidence sufficiently strong to warrant a cautious person to believe that the person accused is guilty of the offense charged.' " *Linn v. Moffitt*, 73 S.W.3d 629, 634 (Mo.App.2002) quoting *Thompson v. Wal–Mart Stores, Inc.*, 890 S.W.2d 780, 782 (Mo.App.1995). This Court considers the facts as the prosecuting party could reasonably have believed them to be under the circumstances at the time. *Id.* This case was initiated on the sworn information of Assistant AG. Where a prosecution is initiated by the sworn information of the prosecutor based on his information, knowledge, and belief, a *prima facie* showing of probable cause is established. *Ragan*, 887 S.W.2d at 732. Where a *prima facie* showing of probable cause exists, the fact that the plaintiff was acquitted does not, without more, create a genuine issue of fact on that issue. *Baker*, 744 S.W.2d at 889.

■■■■ Appellants did not rebut this *prima facie* showing of probable cause. Despite the contentions in their brief, they did not show facts to the trial court that any of the defendants provided false information that resulted in the prosecution of Mr. Crow. Assistant AG made it clear what resulted in his decision to prosecute Mr. Crow, which was his own independent

---

**2.** Section 287.128.6 RSMo 2000 provides that:

> ... The unit **shall** investigate all complaints and present any finding of fraud or noncompliance to the director, who **may** refer the file to the attorney general. The attorney general **may** prosecute any fraud or noncompliance associated with this chapter....

(Emphasis added).

review of the videotape and statements made by Mr. Crow to Safety Coordinator and Litwiller. Appellants also claim that the defendants withheld exculpatory information. The failure to provide every last piece of information in one's possession does not constitute providing false information. *See Simpson v. Indopco, Inc.*, 18 S.W.3d 470, 472–74 (Mo.App.2000). In that case, the defendant employer in a malicious prosecution action, which had provided information to the Fraud Unit, did not send its own internal company injury report completed by the plaintiff's supervisor, the group health insurance form filled out by plaintiff's wife, or a patient intake form from a treating physician. *Id.* at 472. All of those documents supported the plaintiff's claim that his injuries were work-related, rather than stemming from outside activity. *Id.* The employer also failed to list the plaintiff's supervisor and a co-worker as witnesses on the fraud complaint form, and both witnesses would have testified that the injuries at issue were work-related. *Id.* The employer did provide other evidence that constituted probable cause, and the failure to provide every last bit of evidence, including exculpatory evidence, did not establish want of probable cause. *Id.* at 472, 474.

In the present case, Defendants showed undisputed facts that there was probable cause. The case was initiated on the sworn information of the Assistant AG based on his information, knowledge, and belief, relying on his own review of the videotape and the statements made by Mr. Crow to Safety Coordinator and Litwiller. This established a *prima facie* showing of probable cause. As noted above, Appellants did not rebut this *prima facie* showing of probable cause, even assuming *arguendo* that the Defendants did not disclose some potentially exculpatory evidence, as this does not show that

they provided false information. *See id.* Point denied.

In their third point relied on, Appellants argue that the trial court erred in granting summary judgment in favor of the defendants on Mr. Crow's abuse of process claim. They aver that they produced sufficient evidence to create an issue of material fact as to whether the defendants used legal process to advance a collateral and illegal purpose by instigating the prosecution of Mr. Crow, which we held in the previous point relied on that Defendants did not do. Appellants also argue that they showed that Green illegally acted as a private prosecutor during the prosecution of Mr. Crow by appearing at depositions of behalf of the prosecution and by obstructing Mr. Crow's efforts to obtain exculpatory evidence, with the improper and collateral purpose of advancing the interests of the defendants in the workers' compensation proceedings.

■■■■ The elements of an abuse of process claim are: (1) the present defendant made an improper, illegal, perverted use of process, which use was neither warranted nor authorized by the process; (2) the defendant had an illegal purpose in doing so; and (3) damage resulted. *Romeo v. Jones*, 144 S.W.3d 324, 330 (Mo. App.2004). The plaintiff must show that the process was used to achieve an unlawful end, or that it compelled him to do something that he could not legally be compelled to do. *Duvall v. Lawrence*, 86 S.W.3d 74, 85 (Mo.App.2002). Abuse of process refers to a definite, willful act, not authorized by the process, or aimed at an objective not legitimate in the proper use of such process. *Community Title Company of St. Louis v. Lieberman Management Company*, 817 S.W.2d 255, 258 (Mo. App.1991). The defendant must have some ulterior purpose and act willfully in

the improper use of the process. *Id.* This ulterior purpose can be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive. *Id.* quoting *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 599 (Mo. 1955). "No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be." *Muegler v. Berndsen,* 964 S.W.2d 459, 462 (Mo.App.1998).

 The language of section 287.128 indicates that the Missouri Legislature wished to encourage persons, including employers, to report claims of possible workers' compensation fraud. We have already held that the trial court properly granted summary judgment in favor of the various defendants on Mr. Crow's claim of malicious prosecution. None of the defendants caused process to be used or abused. Assistant AG issued a sworn information based on his review of evidence. There was probable cause for the prosecution. The purpose of providing that information to the Fraud Unit was to prevent possible fraud. The Fraud Unit investigated, and made its recommendations to its Director, who in turn forwarded the file to that Missouri Attorney General's Office. Appellants admitted that the purpose in providing that information to the Fraud Unit was to cause a fraud prosecution against Mr. Crow. There was no illegal purpose in the actions of defendants, and the summary judgment evidence did not show that process was used for a collateral purpose. *See Teefey v. Cleaves,* 73 S.W.3d 813, 818 (Mo.App.2002).

 Appellants also contend that Green acted as a private prosecutor. The record reflects that this contention is not supported by summary judgment facts. Green was present at several depositions that Assistant AG did not attend. However-

er, Green was not representing the State of Missouri, but rather was present representing the deponents, who had a right to counsel. While it is true that the court reporter erroneously noted that Green was representing the State, Assistant AG stated in his deposition that this was a mistake, and that he had contacted Green and the court reporter to correct that error. Assistant AG's deposition also states that while Green was erroneously listed as representing the State in several depositions, the record of those same depositions also indicated that Green was there on behalf of the deponent and on behalf of Cassens. Green did not participate at the criminal trial of Mr. Crow. Appellants also argue in their brief that Green transported several witnesses to the criminal prosecution of Mr. Crow. Even if true, these same witnesses were his clients, whom he had represented in their depositions, and transportation hardly amounts to acting as a private prosecutor in the manner forbidden by the Missouri Supreme Court in *State v. Harrington,* 534 S.W.2d 44 (Mo. banc 1976). Point denied.

In their fourth point relied on, Appellants aver that the trial court erred in granting summary judgment in favor of defendants on Mr. Crow's claim for discrimination under section 287.780 in that the trial court misapplied and misinterpreted the law "in ruling that an employer's instigation and carrying out of a criminal prosecution of an employee can never constitute discrimination" under the statute. Appellants also contend that the trial court misapplied and misinterpreted the law in ruling that Litwiller, Crawford, and Green could not be liable for discrimination under the statute as agents of Cassens because the plain language of section 287.780 extends liability to the agents of an employer.

Section 287.780 provides as follows:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

To establish a claim for discrimination under this statute, a plaintiff must prove four elements: (1) his status as an employee prior to his injury; (2) his exercise of rights granted by Chapter 287; (3) the employer's discrimination against or discharge of the employee; and (4) an exclusive causal relationship between plaintiff's actions and employer's actions. *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 149 (Mo.App.1999). Discrimination can take a variety of forms, "including 'denying the employee advancement, salary or hourly pay increases, assignment to less desirous jobs or locations, etc.'" *Palermo v. Tension Envelope Corp.*, 959 S.W.2d 825, 828 (Mo.App.1997) (quoting *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 149 n. 3 (Mo.App.1983)).

The trial court found that Mr. Crow failed to demonstrate any negative act against him in the workplace. Appellants assert that the action of Cassens and its agents in the "instigation and carrying out of a criminal prosecution" of him for making a worker's compensation claim constitutes discrimination under section 287.780. Appellants argue that the trial court "granted summary judgment based on its ruling as a matter of law that the instigation of a criminal fraud prosecution in retaliation for the filing of a workers' compensation claim cannot constitute discrimination under Section 287.780[ ]." This is not what the trial court actually found or concluded.

What the trial court in fact did was make a set of findings that indicated that there had been no discriminatory acts against Mr. Crow. It concluded that he failed to demonstrate that there had been any negative act against him in the workplace. It did not conclude **as a matter of law** that filing a complaint with the Fraud Unit cannot constitute discrimination under section 287.780. Rather, it concluded that it could not be "reasonably argued that the referral of [Mr. Crow] to the Fraud Unit was tantamount to a discharge that would be actionable under section 287.780." The trial court concluded that in this particular case, given the undisputed facts, the referral of Mr. Crow to the Fraud Unit was not equivalent to an actionable discharge of Mr. Crow under the statute. This is not the broad legal principle that Appellants make it out to be in their brief. We held in our analysis of Appellants' second point relied on that merely providing honest information that leads to a prosecution is not instigation for a malicious prosecution claim. *See Baker*, 744 S.W.2d at 889. We also held that there was a *prima facie* showing of probable cause for the criminal prosecution of Mr. Crow. Having held that the trial court did not err in granting summary judgment in favor of defendants on the claim of malicious prosecution, we hold that under the circumstances of this case, the trial court did not err in granting summary judgment in favor of defendants where the alleged discriminatory act was the referral of Mr. Crow to the Fraud Unit. To hold otherwise would have a chilling effect on employers reporting possible workers' compensation fraud to the Fraud Unit. As we noted in our analysis of Appellants' second point relied on, sound public policy mandates that the law should encourage the uncovering and prosecution of crime.

*See Sanders,* 682 S.W.2d at 806. Point denied.[3]

In their fifth point relied on Appellants assert that the trial court erred in granting summary judgment in favor of the defendants on their claims of intentional infliction of emotional distress. Appellants aver that they produced evidence that established a genuine issue of material fact as to whether the conduct of defendants was extreme and outrageous and done in an intentional or reckless manner. They also argue that Mrs. Crow's claim was not barred by judicial privilege.

■■■■■ Not just any wrongful conduct is a sufficient predicate for the tort of intentional infliction of emotional distress. *Thomas,* 31 S.W.3d at 446. There are a number of essential elements: (1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause extreme emotional distress to the victim. *Id.* It is a matter for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so outrageous and extreme as to permit recovery. *Thornburg v. Federal Express Corp.,* 62 S.W.3d 421, 428 (Mo.App.2001) quoting *Viehweg v. Vic Tanny International of Missouri, Inc.,* 732 S.W.2d 212, 213 (Mo. App.1987).

■■■■■ Nothing in the record indicates that any of the defendants intentionally or recklessly acted in an extreme or outrageous way. Nothing in the record shows that inflicting emotional distress on either of the Appellants was the sole motivating factor for any of the behavior of the defendants. Cassens, Crawford, and Litwiller were investigating a workers' compensation claim. Mr. Crow was videotaped in a public place because of a concern for possible fraud. Information was provided to the Fraud Unit because of the possibility, not certainty, of a questionable workers' compensation claim. Green acted on behalf of his clients in providing some information to the Fraud Unit, and in attending depositions. None of this is outrageous or extreme, and it is undisputed that a motivation for providing this information was fraud prevention. Accordingly, a desire to inflict emotional distress could not have been the sole motivation. Regarding the videotape of Mrs. Crow purportedly urinating in a public area, the taping of Mrs. Crow was incidental to taping Mr. Crow. There is no evidence that any of the defendants were aware of what, precisely, Mrs. Crow was doing, or that they acted with the sole intent to inflict emotional distress on Mrs. Crow when the unedited videotape was provided to other people in the process of the investigation of Mr. Crow's workers' compensation claim. Because the foregoing is dispositive, we need not address the question of judicial privilege. Point denied.

In their sixth point relied on, Appellants argue that the trial court erred in granting summary judgment on Mrs. Crow's invasion of privacy claim "against Defendant Litwiller" in that the trial court misapplied the law in ruling that no cause of action was stated because the alleged invasion of privacy occurred in a public park. Appellants assert that they produced sufficient evidence to create a genuine issue of material fact for the jury as to whether Mrs. Crow was in a public area when she was

---

3. Because there was neither discrimination nor discharge of Mr. Crow that would be actionable under section 287.780, we need not address the issue of whether the statute would permit an action for damages against agents of an employer.

videotaped and as to whether there was an intrusion into her private seclusion. Appellants also aver that Mrs. Crow's claim was not barred by judicial privilege.

We note that Mrs. Crow, by alleging in her point relied on that the trial court erred in granting summary on her claim for invasion of privacy only against Litwiller, has not preserved any assertion of error regarding this claim against all of the other defendants. Rules 84.04 and 84.13; *Otte v. Langley's Lawn Care, Inc.,* 66 S.W.3d 64, 72 n. 3 (Mo.App.2001). The argument section of the brief on this point relied on does refer to claims against all of the defendants. But to the extent that the argument includes matters not raised in the point relied on, we need not consider such issues because they are not preserved for review. Rule 84.04; *Husch & Eppenberger, LLC v. Eisenberg,* 213 S.W.3d 124, 131 (Mo.App.2006). Nevertheless, we will review the claims against all defendants *ex gratia.*

 The general right to privacy encompasses four separate privacy interests. *St. Anthony's Medical Center v. H.S.H.,* 974 S.W.2d 606, 609 (Mo.App. 1998). Invasion of these privacy interests may result in four separate torts, each of which has its own distinct set of elements. *Id.* The right to privacy is breached when there is: (1) an unreasonable intrusion upon the seclusion of another; (2) the appropriation of the name or likeness of another; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public. *Id.*

 Although Appellants' petition does not specify which of the privacy interests they contend were invaded, in their brief they argue that they made a submissible case under "an intrusion upon seclusion" theory. "Three elements encompass the claim for **unreasonable** intrusion upon the seclusion of another: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through **unreasonable means.**" *Id.* (Emphasis added).

 The elimination of bodily wastes would ordinarily be considered a private matter. However, there is no genuine dispute that the alleged urination occurred in a public place, on or near a boat ramp at a public park. While Mrs. Crow avers that the area was wooded and secluded, we note that it was not so secluded that there was any apparent difficulty in videotaping her actions. Mrs. Crow was not videotaped in the restroom of a public park or while using an enclosed portable toilet or using a portable toilet while inside a tent. This was not a secret matter and the information, namely the videotape, was not obtained through unreasonable means.

Appellants cite to *Y.G. v. Jewish Hospital of St. Louis,* 795 S.W.2d 488 (Mo.App. 1990) for the proposition that a matter taking place in a public location may still be protected by the privacy right against unreasonable intrusion upon the seclusion of another. That case is readily distinguishable from the present one. The plaintiffs in *Jewish Hospital* alleged in their petition "that they were 'assured' that 'no publicity nor public exposure' would occur, that they twice refused interviews or to be filmed, and made every reasonable effort to avoid being filmed, and that no one know of their reproductive process other than Y.G.'s mother." *Id.* at 501. They were assured that the function was private, involving only others in the *in vitro* program. *Id.* at 501–02. An affidavit from a reporter showed that the hospital invited the news media to attend and report on the function at issue. *Id.* at 501.

This is substantially different from allegedly urinating in a wooded area in a public park. Point denied.

In their seventh point relied on, Appellants assert that the trial court erred in granting summary judgment on their derivative claims for loss of consortium and civil conspiracy in that the defendants were not entitled to summary judgment on their underlying claims.

Mrs. Crow's loss of consortium claim is derivative of the claims of her husband, Mr. Crow. *See Wright v. Barr*, 62 S.W.3d 509, 536–37 (Mo.App.2001). This means that "'the defendant must be proved to have caused the original injury, which in turn caused the spouse to suffer.'" *Id.* (quoting *Burke v. L & J Food and Liquor, Inc.*, 945 S.W.2d 662, 664 (Mo. App.1997)). Accordingly, one spouse may not receive damages for loss of consortium if the other is not injured. *Id.* In like fashion, conspiracy is not actionable by itself in the absence of an underlying tort or wrongful act, and in the absence of such an underlying tort or wrongful act, a claim for civil conspiracy must fail. *See State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156–57 (Mo.App.2005). Having held that summary judgment was appropriate for the various claims that would underlay the loss of consortium and civil conspiracy claims, this Court holds that the trial court did not err in granting summary judgment in favor of the defendants on the claims for loss of consortium and civil conspiracy. Point denied.

In their eighth point relied on, Appellants aver that the trial court erred by abusing its discretion in ruling that they were not entitled to discover Litwiller's claims notes and other documents that did not involve communication with Green, in that the notes were relevant and not subject to a claim of privilege, and Appellants were entitled to the documents under the "undue hardship" exception to work-product privilege. Appellants also contend that the trial court abused its discretion in finding that they were not entitled to discover documents containing communications between Green and other defendants under the crime-fraud exception to the attorney-client privilege. Appellants further assert that the trial court abused its discretion in ruling that evidence regarding David Kay's workers' compensation claim was not subject to discovery and was inadmissible in that the evidence was relevant to establish the defendants' motive and malice.

Defendants moved to strike the Appellants' eighth point relied on as well as their supplemental legal file. They contend that the claims of error in this eighth point are not preserved for review for several different reasons. Defendants also aver that Appellants' eighth point relied on improperly combines several issues into a single point relied on in violation of Rule 84.04(d).

Appellants' eighth point does combine several distinct claims of error into a single point under the rubric that they are all document discovery errors by the trial court. While that is technically true, the issues involved are sufficiently distinct that they should properly be separated into two or possibly three individual points. While we would be justified in dismissing this point relied on that basis, we will nevertheless review it on the merits, assuming *arguendo* that the claims were properly preserved.

The trial court has broad discretion regarding discovery. *Zimmer v. Fisher*, 171 S.W.3d 76, 79 (Mo.App.2005). When reviewing the trial court's decision concerning issues arising from pre-trial discovery, this Court looks only for an abuse of the trial court's broad discretion. *Day Advertising Inc. v. Devries and Asso-*

*ciates, P.C.*, 217 S.W.3d 362, 366 (Mo.App. 2007).

Appellants sought twenty-one pages of notes prepared by Litwiller regarding Mr. Crow's workers' compensation claim. The trial court examined these documents *in camera* and determined that they were protected from discovery on the basis of the attorney-client privilege, the insured-insurer privilege, and the work-product doctrine. Although Litwiller is not an attorney and does not directly work for an attorney, her job as a third-party administrator for workers' compensation claims against Cassens requires her to investigate such claims and make reports on them, which include suggestions on disposition. Documents prepared by an agent or employee at the employer's direction for the purpose of obtaining the advice of counsel or for use in prospective or pending litigation are encompassed by the attorney-client privilege. *St. Louis Little Rock Hospital, Inc. v. Gaertner*, 682 S.W.2d 146, 149 (Mo.App.1984). Litwiller was such an agent. The trial court examined the notes at issue, and determined that they were the type of document that would be used in determining whether to contest, settle, or otherwise dispose of a claim. The trial court did not abuse its broad discretion in finding that these documents were protected by the attorney-client privilege, and sustaining the defendants motion for a protective order.

Appellants also sought to discover documents that contained communications between Green, who was the attorney for Cassens, and the other defendants, claiming that the documents at issue were discoverable and admissible under the crime-fraud exception to the attorney-client privilege. We note that the trial court examined the documents at issue *in camera*.

The attorney-client privilege is not absolute. *State ex rel. Peabody Coal Company v. Clark*, 863 S.W.2d 604, 607 (Mo. banc 1993). There is the crime-fraud exception, wherein a person cannot employ an attorney for the purpose of aiding and abetting him in the commission of a future crime or fraud and thereby prevent the attorney from exposing such crime or fraud by sealing his lips via the attorney-client privilege. *Id.* The Missouri Supreme Court did not hold in Clark that this exception applied in a civil context, and expressly did not decide that issue in that case. *Id.* at 607–08. This Court also need not decide that issue. The crime-fraud exception requires that the party seeking discovery make a *prima facie* showing that the party asserting the privilege has committed a crime or fraud, and must also demonstrate that the privileged material has a direct and contemporaneous relationship to the crime or fraud. *Id.* at 608. A bare allegation of fraud is not sufficient. *Id.* Assuming *arguendo* that the crime-fraud exception could be applicable in the civil context, Appellants did not make a *prima facie* showing that a crime or fraud was committed. The trial court did not abuse its discretion in granting defendants' motion for a protective order regarding these documents.

Evidence must be both logically and legally relevant to be admissible. *Shelton v. City of Springfield*, 130 S.W.3d 30, 37 (Mo.App.2004). Having examined the record, we also hold that the trial court did not abuse its discretion in ruling that discovery involving a prior workers' compensation claim by Dwight Kay was irrelevant and hence inadmissible. There was no connection between Mr. Kay's claim and that of Mr. Crow. Point denied.

The judgment of the trial court is af-

firmed.[4]

ROY L. RICHTER and GLENN A. NORTON, JJ., concur.

---

4. The defendants' motion to strike Appellants' eighth point relied on and the supplemental legal file is denied as moot.