**J.R., Plaintiff–Appellant,**

v.

**P.B.A., R.B., R.F.B., G.W.B., J.R.C., W.D.D., R.E.K., H.C.L., G.C.O., D.L. McM., and R.McF., all individually, Defendants–Respondents.**

No. 15701.

Missouri Court of Appeals, Southern District, Division Two.

June 30, 1989.

**236**

L.R. Buehner, Buehner & Buehner, Joplin, for plaintiff-appellant.

Ronald E. Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendants-respondents.

PREWITT, Judge.

Plaintiff appeals from summary judgment in favor of defendants. She contends that this judgment was improper because the record "demonstrated that there were genuine issues as to material facts". At the request of plaintiff, with the agreement of defendants, the parties are referred to by their initials.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.-04(c). On appeal from summary judgment, review of the record is to be in the light most favorable to the party against whom summary judgment was entered. *Fisher v. Scott & Fetzer Co.*, 664 S.W.2d 662, 663 (Mo.App.1984); *Rockwell International, Inc. v. Westport Office Equipment*, 606 S.W.2d 477, 479 (Mo.App.1980).

Missouri recognized the tort of intentional affliction of emotional distress, upon which plaintiff seeks to base her claim, in *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965). There, the court cited Restatement (Second) of Torts § 46 (1965) that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, for such bodily harm." Id. at 568.

Obviously, what is "extreme and outrageous conduct" is difficult to define and each case must turn on its facts. However, such conduct must be more than simply malicious or intentional. *Viehweg v. Vic Tanny International of Missouri*, 732 S.W.2d 212, 213 (Mo.App.1987). The defendant's conduct must be so extreme as to be beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized community. Id. It must be beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Id. See also *Boes v. Deschu*, 768 S.W.2d 205, 207–208 (Mo.App. 1989).

It is for the courts to determine whether the defendant's conduct is so extreme and outrageous as to permit recovery. *Wilt v. Kansas City Area Transportation Authority*, 629 S.W.2d 669, 671 (Mo. App.1982). The court is to determine whether an average member of the community would term such conduct "outrageous". Id. See also *Rooney v. National Super Markets, Inc.*, 668 S.W.2d 649, 651 (Mo.App.1984).

Plaintiff was pursuing a worker's compensation claim against defendants, a partnership of medical doctors. She also brought a suit against defendants contending that she had been wrongfully discharged for bringing a worker's compensation claim. In connection with these matters, according to her petition, "plaintiff sought to obtain her full and complete medical records from defendants".

On February 21, 1983, her attorney was furnished records and forms pertaining to her medical history beginning on January 24, 1975. On March 3, 1983, additional medical records from August 6, 1949, to

January 21, 1975, were sent to plaintiff's attorney by defendants' attorney. In the latter on a card which contained one reference regarding plaintiff there were also references to medical treatment of a former husband of plaintiff's. It showed that he had been treated for "pain on urination and urethral discharge" and was given penicillin. Plaintiff's attorney showed her the records. Plaintiff asserted in an affidavit filed in the trial court that because of these entries she "believed that the records indicated that [her former husband] probably had a venereal disease when we got married and also probably contracted one again after we were married."

There is nothing in the court record indicating that anyone other than plaintiff's attorney saw these medical records before he showed them to her. Admittedly he sought, with her authorization, "to obtain her full and complete medical records from defendants". Because they were married, medical records pertaining to both plaintiff and her former husband were sometimes kept by defendants on the same card or sheet. Had they copied only a part of the card, and sent that to plaintiff's attorney, defendants could have anticipated that the attorney might have requested to see what was on the remaining part. We conclude on these facts that defendants' conduct was not extreme or outrageous so as to justify an action based on that conduct. The trial court properly granted summary judgment.

The judgment is affirmed.

FLANIGAN, P.J., and HOGAN, J., concur.

MAUS, J., recused.