**ST. ANTHONY'S MEDICAL CENTER, Respondent,**

v.

**H.S.H., Appellant.**

No. 73399.

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1998.

David L. Campbell, J. Russell Carnahan, St. Louis, for appellant.

Allen D. Allred, V. Scott Williams, St. Louis, for respondent.

AHRENS, Presiding Judge.

H.S.H., defendant, appeals from the trial court's judgment granting plaintiff St. Anthony's Medical Center's motion for summary judgment on defendant's counterclaims for invasion of privacy and intentional infliction of emotional distress. Defendant also appeals from the dismissal, with prejudice, of his counterclaim for negligent infliction of emotional distress. We affirm.

Defendant was hospitalized at St. Anthony's Medical Center from February 2, 1991 to March 1, 1991 and from April 23, 1991 to May 14, 1991 for psychiatric and psychological care. Defendant did not receive treatment for alcohol or drug abuse at St. Anthony's. In March 1991, defendant was the respondent in a dissolution of marriage proceeding in the Circuit Court of Franklin County, Missouri. As part of that proceeding, the court ordered defendant, over his objection, to execute the following authorization releasing medical records to his then wife's attorney, Joseph Aubuchon:

> You are hereby authorized to release to Mr. Joseph R. Aubuchon...all medical records pertaining to *[H.S.H.]'s treatment of chemical dependency or alcohol abuse, or both* rendered by you....

Mr. Aubuchon sent this release, along with a cover letter requesting "copies of the medical records concerning [H.S.H.]" to St. Anthony's on April 4, 1992. St. Anthony's medical records department forwarded copies of all medical records relating to both of defendant's 1991 hospitalizations to Mr. Aubuchon accompanied by a memorandum stating that the confidentiality of the disclosed information was protected by federal law (42 C.F.R. Section 2). On August 3, 1992, St. Anthony's informed Mr. Aubuchon by letter that certain medical records relating to defendant, released to Mr. Aubuchon under defendant's authorization, did not relate to chemical dependence or alcohol abuse treatment.[1] St. Anthony's refunded photocopying charges paid by Mr. Aubuchon and requested immediate return of defendant's records. The records were not returned. The Franklin County Circuit Court granted defendant's motion to suppress his St. Anthony's medical records in the dissolution proceeding.

On October 5, 1992, St. Anthony's brought suit against defendant for unpaid charges incurred during his 1991 hospitalizations.[2] Defendant filed a counterclaim that included

---

1. St. Anthony's, in its brief, refers to eight entries in defendant's medical records that suggest that the treating physician could not rule out the possibility of alcohol abuse or that suggested possible drug side effects from defendant's treatment for depression.

2. St. Anthony's dismissed this claim July 17, 1997.

three counts: invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendant amended his counterclaim twice; the second amendment added a claim for violation of his civil rights under 42 U.S.C. Section 1983, a claim defendant subsequently voluntarily dismissed.

Both St. Anthony's and defendant moved for summary judgment. In separate proceedings, the trial court granted St. Anthony's motion for summary judgment on defendant's counterclaims for invasion of privacy and intentional infliction of emotional distress and St. Anthony's motion to dismiss, with prejudice and without leave to amend, defendant's counterclaim for negligent infliction of emotional distress. On September 8, 1997, the trial court denied defendant's motion to reconsider and for leave to file a third amended counterclaim. Defendant timely filed this appeal.

## I. Invasion of Privacy

■ Summary judgment shall be entered where the moving party has demonstrated, through the pleadings, depositions, answer to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. Rule 74.04(c). When considering an appeal from a summary judgment, this court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The judgment should be affirmed regardless of the theory upon which it is based insofar as upon the law and evidence, such judgment could have been properly reached on any reasonable theory." *Air Cooling & Energy v. Midwestern Const.*, 602 S.W.2d 926, 927 (Mo.App.1980).

■ Defendant argues on appeal that the trial court erred in granting summary judgment on his counterclaim for invasion of privacy because the court applied the wrong invasion of privacy tort to the facts alleged in his pleadings. The Missouri Supreme Court recognized the right to privacy as a general

tort doctrine in *Barber v. Time, Inc.*, 348 Mo. 1199, 159 S.W.2d 291, 295 (Mo.1942). This general right to privacy includes four separate privacy interests. *Hester v. Barnett*, 723 S.W.2d 544, 562 (Mo.App.1987). Invasion of these interests may result in four separate torts, each with its own distinct set of elements. *Id.* The right to privacy is invaded when there is: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public. *Id.*

Defendant's pleadings, from his initial answer and original counterclaim through his seconded amended answer and his countermotion for partial summary judgment, failed to specify upon which of the four invasion of privacy interests his counterclaim rested. Defendant argues on appeal that he stated a cause of action for the invasion of the privacy tort of "unreasonable intrusion upon the seclusion of another" not "unreasonable publicity given to another's private life," the tort analyzed by the trial court.

■ "A petition must be read from its four corners and a court must give to the language its plain and ordinary meaning and such interpretation as fairly appears to have been intended by the pleader." *Gover v. Cleveland*, 299 S.W.2d 239, 242 (Mo.App. 1957). Defendant's second amended answer and counterclaim for invasion of privacy alleged that St. Anthony's disclosed defendant's confidential records contrary to its own policy and to federal law without defendant's knowledge, waiver, or valid consent. On these allegations, the trial court reasonably concluded that defendant's counterclaim was for the unreasonable publicity given to another's private life. However, under either this tort or the tort of intrusion upon the seclusion of another, defendant's counterclaim for invasion of privacy fails.

■ Three elements encompass the claim for unreasonable intrusion upon the seclusion of another: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter

private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means. *Corcoran v. Southwestern Bell Telephone Co.,* 572 S.W.2d 212, 215 (Mo.App.1978). The elements of the tort of unreasonable publicity given to another's private life, the tort applied by the trial court, are: (1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Y.G. v. Jewish Hosp. of St. Louis,* 795 S.W.2d 488, 498–99 (Mo.App.1990).

▮ Assuming, without deciding, that defendant's counterclaim sufficiently pleads the first two elements of a claim of intrusion upon seclusion, nevertheless, the petition fails as to the third element. To meet the third element, the claimant must show that the other party unreasonably *obtained* information about the claimant's private subject matter. In his argument on appeal, defendant confuses 'publishing' with 'obtaining.' In *Corcoran,* the defendant obtained her former in-laws' telephone bill by deception, opened the sealed, first-class mail addressed to plaintiffs, and read the contents of the mail without authorization to learn the whereabouts of her former husband. The court concluded that the evidence was sufficient to establish that plaintiffs had made a submissible case for intrusion upon seclusion because defendant obtained private information through "methods objectionable to the reasonable man." *Id.* at 215. St. Anthony's did not unreasonably obtain defendant's medical records through deception, illegal activity, or other unreasonable methods. In the ordinary course of its business, St. Anthony's obtained defendant's medical records as documentation of medical services rendered by the hospital to defendant.

On appeal, defendant argued that the hospital *published* his medical records by unreasonable means because 42 C.F.R. Section 2.20, cited in St. Anthony's transmission of defendant's medical records to Mr. Aubuchon, rendered his limited authorization invalid. This federal regulation applies to disclosure of alcohol and drug abuse records of patients who have applied for or undergone diagnosis or treatment for alcohol or drug abuse at a federally assisted program. 42 C.F.R. Section 2.1, 2.2, 2.11. Defendant did not plead that he had applied for treatment for alcohol or drug abuse at St. Anthony's, that he was diagnosed or treated for alcohol or drug abuse, or that the released records pertained to alcohol or drug abuse treatment. Publishing private information is not an element of unreasonable intrusion upon seclusion. Even if defendant had not confused 'publishing' with 'obtaining' as the conduct proscribed in the third element of unreasonable intrusion upon seclusion, the federal regulations cited by defendant do not apply to St. Anthony's disclosure of his psychiatric or psychological records.

Even if defendant's invasion of privacy counterclaim was for the public disclosure of private facts, which he has not argued, the circuit court properly found that the first element of publication in that cause of action could not be resolved in his favor. A summary judgment movant need not controvert all elements of a non-movant's claim to establish a right to summary judgment. *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 675 (Mo.App.1995). A nonmovant may establish the right to summary judgment by showing facts that negate any one of the claimant's element facts. *Id.*

▮ Publication means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *Biederman's of Springfield, Inc. v. Wright,* 322 S.W.2d 892, 898 (Mo. 1959). "The critical aspect of the publication requirement is *public* disclosure – communications that are available to the general public, communications that have a likelihood of becoming public knowledge." *Childs v. Williams,* 825 S.W.2d 4, 9 (Mo.App.1992). St. Anthony's published defendant's medical records to one individual, Mr. Aubuchon, not to the public at large. In *Biederman's,* the publications at issue were made orally in a public restaurant, "an environment conducive to the dissemination of the information to the public at large." *Biederman's,* 322 S.W.2d at 898. *See also Childs,* 825 S.W.2d at 9 (psychologist's letter published to plaintiff employee's supervisors and others with legit-

imate and direct interest in plaintiff's employment did not constitute publication). Publication by St. Anthony's of defendant's medical records to his wife's attorney does not constitute publication as required in an action for public disclosure of private facts. The trial court did not err in granting St. Anthony's motion for summary judgment on the public disclosure of private facts invasion of privacy tort because defendant could not establish the element of publication in support of his counterclaim.

## II. Intentional Infliction of Emotional Distress

▇▇▇ St. Anthony's motion for summary judgment on defendant's counterclaim for intentional infliction of emotional distress was properly granted by the trial court. To establish this claim, a plaintiff must show that (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted in an intentional or reckless manner; and (3) the defendant's acts caused plaintiff severe emotional distress that resulted in bodily harm. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 316 (Mo. banc 1993). It is not enough that the defendant may have acted with tortious or even criminal intent. *Frye v. CBS, Inc.*, 671 S.W.2d 316, 319 (Mo.App. 1984). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* It must be beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Viehweg v. Vic Tanny International of Missouri*, 732 S.W.2d 212, 213 (Mo.App. 1987). It is for the court to determine, in the first instance, whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. *Id.* at 319.

▇▇▇ Defendant argues that when St. Anthony's disclosed confidential psychiatric information outside the scope of his authorization for release of records relating to treatment for chemical dependency or alcohol abuse, to his wife's attorney in a dissolution proceeding, St. Anthony's conduct was extreme and outrageous. Because there were notations within the released records that indicated that alcohol abuse or drug reactions could not be ruled out as contributing to defendant's medical status, the trial court concluded that there was no genuine issue of fact that St. Anthony's release of the records was not extreme or outrageous behavior. We agree. In *J.R. v. P.B.A.*, 773 S.W.2d 235, 236–37 (Mo.App.1989), a former employee claimed intentional infliction of emotional distress when her employers, who were doctors, disclosed her former husband's medical records in a suit she brought against her employers. She was pursuing a worker's compensation claim against her former employers and a claim that she had been wrongfully discharged in retaliation for bringing the worker's compensation claim. *Id.* at 236. In preparation for the suit, the employee sought release of her full and complete medical records. *Id.* Within the released records was a reference regarding medical treatment of the employee's former husband for pain on urination and urethral discharge. *Id.* The employee claimed intentional infliction of emotional distress because this information led her to believe that her former husband probably had a venereal disease when they married. *Id.* at 237. The court ruled that the defendants' conduct was not extreme or outrageous because (1) plaintiff's authorization to defendants was for her "full and complete medical records;" (2) defendants sometimes kept medical records for married couples "on the same card or sheet;" and (3) nothing in the court record indicated anyone other than the employee's attorney saw the record before the employee did. *Id.* Although defendant, in the instant case, did not authorize disclosure of his psychiatric and psychological treatment records, there were speculative references to drug reactions and alcohol within those records that could reasonably have been released under defendant's limited authorization. At most, release of defendant's medical records, as in *J.R. v. P.B.A.*, was an oversight, not extreme or outrageous conduct. We conclude on these facts that plaintiff's release of all of defendant's medical records was not so extreme or outrageous as to justify an action for intentional infliction of emotional distress based on that conduct. The trial court properly granted St. Anthony's motion for summary judgment.

III. Negligent Infliction of Emotional Distress

■ The trial court properly granted St. Anthony's motion to dismiss, with prejudice and without leave to amend, defendant's counterclaim for negligent infliction of emotional distress. To plead such a claim, petitioner must allege that (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity as to be medically significant. *Bass v. Nooney*, 646 S.W.2d 765, 772–73 (Mo.1983). The trial court concluded that (1) defendant had not established that his distress was medically diagnosable or that his distress was of sufficient severity to be medically significant; and (2) there was no basis, in view of the fact that the case had been pending for five years, on which to expect that defendant's counterclaim could be amended to state such a claim. On appeal, defendant argues that this statement in his pleadings should be liberally construed to state a claim for negligent infliction of emotional distress: "defendant/counterclaimant...has been caused to suffer and in the future will continue to suffer shame and humiliation and severe emotional distress... and has been caused to incur and in the future will be caused to incur expenses for psychiatric and psychological treatment, counseling, and medications...."

■ In reviewing an appeal from a motion to dismiss, the court must determine whether the facts pleaded and reasonable inferences to be drawn from the allegations, when viewed in the light most favorable to the plaintiff, demonstrate any basis for relief. *Rosatone v. GTE Sprint Communications*, 761 S.W.2d 670, 671, (Mo.App.1988). "If the petition offers only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, a motion to dismiss is properly granted." *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773 (Mo.App. 1994). Defendant's second amended answer and counterclaim offered a conclusory statement that he suffered shame and humiliation and severe emotional distress but failed to contain facts or allegations from which to infer medically diagnosable and medically significant emotional distress.

■ Although the trial court conceded that leave to amend would normally be granted, the court dismissed defendant's second amended counterclaim for negligent infliction of emotional distress, with prejudice and without leave to amend, because the case had been pending for five years and all papers filed in connection with defendant's motion for summary judgment indicated there was no basis on which to expect that the counterclaim could be amended to state a claim.

Rule 55.33(a) provides that: "A pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the pleading may be amended at any time within thirty days after it is served. Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "Whether to allow the amendment of a pleading is at the discretion of the trial court and this court will not disturb its decision absent an obvious and palpable abuse of discretion." *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.2d 494, 498 (Mo.App.1994). Factors to be considered in whether to allow leave for an amendment are (1) hardship to the moving party if leave to amend is not granted; (2) reasons for failure to include any new matter in earlier pleadings; (3) timeliness of the application; (4) whether the amendment could cure the inadequacy of the moving party's pleading; and (5) injustice resulting to the party opposing the motion should it be granted. *Curnutt v. Scott Melvin Transport, Inc.*, 903 S.W.2d 184, 193 (Mo.App.1995). Consideration of the second and third factors supports our conclusion that there was no abuse of discretion by the trial court.

After filing an answer and counterclaim in St. Anthony's suit in late 1992, defendant amended his petition twice, the second time on July 1, 1996. Not until July 1997, when asking the court to reconsider its order dismissing his second amended counterclaim for negligent infliction of emotional distress, did

defendant allege that his emotional distress was medically diagnosable and of sufficient severity to be medically significant. Only in conjunction with his motion for leave to file a third amended counterclaim, did defendant propose to submit copies of medical treatment records, dating from 1991 to late 1996, to establish that his emotional distress was medically diagnosable and medically significant.

Defendant's medical records were available and could have been submitted when he amended his answer and counterclaims in July 1996. "...[T]he purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of pleading." *Kenley*, 870 S.W.2d at 498. Defendant does not argue on appeal that information contained in his 1991 to July 1996 medical records in support of his counterclaim for negligent infliction of emotional distress was unknown or overlooked in July 1996 at the time he amended his answer and counterclaim for the second time. In *Benson v. Geller*, 619 S.W.2d 947, 948 (Mo. App.1981), the appellant argued that the trial court erred in dismissing his second amended petition for failure to state a cause of action in fraud and in refusing leave to amend. The reviewing court found no abuse of discretion and affirmed the dismissal because "[n]one of the additional allegations which appellant proposed to add in his third amended petition were based upon information unavailable to him at the time the second amended petition was filed." *Id.* at 949. Even if defendant could establish in a third amended answer and counterclaim that his emotional distress was medically diagnosable and of sufficient severity, he did not indicate how he would allege that St. Anthony's should have realized that its conduct involved an unreasonable risk of causing his distress.

The trial court did not palpably and obviously abuse its discretion in dismissing, with prejudice and without leave to amend, defendant's counterclaim for negligent infliction of emotional distress.

IV. Conclusion

On appeal, St. Anthony's argues that Section 191.227 RSMo Supp.1990 protected the hospital from liability on all of defendant's counterclaims.[3] Because the circuit court properly granted summary judgment in favor of St. Anthony's on defendant's counterclaims for invasion of privacy and intentional infliction of emotional distress and properly dismissed, with prejudice and without leave to amend, defendant's counterclaim for negligent infliction of emotional distress, we do not reach the issue of whether Section 191.277 RSMo Supp.1990 applied to release of medical records to third parties upon written patient request.

The judgment of the trial court is affirmed. CRANDALL and KAROHL, JJ., concur.

---

**3.** Section 191.227 read, in part, that "All...physicians shall, upon written request of a patient, or guardian or legally authorized representative of a patient, furnish a copy of his record of that patient's health history and treatment rendered to the person submitting a written request....The transfer of the patient's record done in good faith shall not render the provider liable to the patient or any other person for any consequences which resulted or may result from disclosure of the patient's record as required by this section."