Missouri Court of Appeals
 Southern District
 Division Two

DENNIS R. RYNO, )
 )
 Appellant, )
 )
 vs. ) No. SD36889
 )
KEVIN S. HILLMAN, ) FILED: January 27, 2022
 )
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

 Honorable Megan K. Seay, Judge

AFFIRMED

 The trial court’s judgment dismissed all counts in the First Amended Petition (the

“petition”) filed by Dennis R. Ryno (“Ryno”) against Kevin S. Hillman (“Hillman”), who

was the elected prosecuting attorney of Pulaski County. 1 The gravamen of the petition

1
 The judgment dismissing Ryno’s petition did not specify whether the dismissal was with or without
prejudice with the result that the dismissal was without prejudice under Rule 67.03 (“Any involuntary
dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify.”). A
dismissal without prejudice generally is not an appealable final judgment, but one recognized exception
permits appeal where “the effect of the trial court’s ruling is to dismiss a plaintiff’s action and not merely
the pleading.” Siebert v. Peoples Bank, 632 S.W.3d 461, 465 (Mo.App. 2021) (citations omitted). The
trial court’s judgment here fell within this exception and, therefore, was final and appealable. Id. at 465-
66.

As we observed in Siebert, “the better practice to avoid questions of finality would be for the trial court to
enter a judgment of dismissal with prejudice if the petition fails to state a claim and the plaintiff elects to
stand on the petition without repleading.” Id. at 465 n.2. This practice is easily accomplished by the trial
court and the parties complying with all the requirements in Rule 67.06, which provides,

 1
was that Hillman made unauthorized disclosures of closed law enforcement records

(including privileged records) in violation of section 610.120 to the Department of the

Army in the course of the Army’s administrative investigation and termination of Ryno’s

federal employment. 2 The petition contained eight counts seeking damages as well as

declaratory and injunctive relief. The trial court’s dismissals were based on numerous

grounds, each in effect a failure to state a claim upon which relief could be granted.

 Ryno appeals, raising ten points relied on. In his points, Ryno does not challenge

the trial court’s dismissal of (1) Counts VII and VIII, which sought declaratory and

injunctive relief, or (2) his other claims for injunctive relief in the prayers of the other

counts. Rather, Ryno challenges only the trial court’s dismissal of his claims for

damages in Counts I-VI.

 Standard of Review

 An appellate court reviews a circuit court’s decision to sustain a
 motion to dismiss de novo. Missouri State Conference of Nat’l Ass’n for
 Advancement of Colored People v. State, 601 S.W.3d 241, 246 (Mo. banc

 On sustaining a motion to dismiss a claim, counterclaim or cross-claim the court shall
 freely grant leave to amend and shall specify the time within which the amendment shall
 be made or amended pleading filed. If the amended pleading is not filed within the time
 allowed, final judgment of dismissal with prejudice shall be entered on motion except in
 cases of excusable neglect; in which cases amendment shall be made promptly by the
 party in default.

All rule references are to Missouri Court Rules (2021).
2
 Ryno’s First Amended Petition appears to claim four disclosures in violation of section 610.120, RSMo
Cum.Supp. 2003 and 2014. The first alleged unlawful disclosure was in November 2013 of “investigative
reports” for misdemeanor charges Hillman filed against Ryno in November 2013 that were “closed
records” under section 610.100.2, RSMo Cum.Supp. 2004. The second alleged unlawful disclosure was in
mid-2015 of “official records pertaining to” Ryno’s arrest and resulting felony charges that were filed by
Hillman in October 2014 but subsequently dismissed that were “closed records” under section 610.105,
RSMo Cum.Supp. 2006. The third alleged unlawful disclosure was in September 2016 of the “official
records” involved in the second alleged unlawful disclosure, and the “investigative reports” for the 2013
misdemeanor charges (with the investigative reports now closed under section 610.105, RSMo Cum.Supp.
2006, even though Ryno did not plead that imposition of his sentence on the 2013 misdemeanor charges
was suspended). Ryno also appears to allege another disclosure in December 2017 of the investigative
reports for the 2013 misdemeanor charges “in violation of [section] 610.120,” RSMo Cum.Supp. 2014, by
obtaining a court order “through deceit.”

 2
 2020). “A motion to dismiss does not permit the circuit court – or this
 Court on appeal – to determine the merits of a claim.” Id. Instead, the
 proper inquiry on a motion to dismiss “is solely a test of the adequacy of
 the petition.” Mitchell v. Phillips, 596 S.W.3d 120, 122 (Mo. banc 2020)
 (citation omitted).

 When considering a motion to dismiss for failure to state a claim
 upon which relief can be granted, . . . “this Court must accept all properly
 pleaded facts as true, giving the pleadings their broadest intendment, and
 construe all allegations favorably to the pleader.” Mitchell, 596 S.W.3d at
 122-23 (citation omitted). We do not weigh the plaintiff’s factual
 allegations to determine whether they are credible or persuasive. Nazeri v.
 Missouri Valley College, 860 S.W.2d 303, 306 (Mo. banc 1993).

 We will, however, disregard conclusory allegations of fact and
 legal conclusions, neither of which can be considered by an appellate court
 in determining whether a petition states a claim upon which relief can be
 granted. See Hall v. Podleski, 355 S.W.3d 570, 578 (Mo. App. 2011). A
 motion to dismiss is properly granted when a petition “does not contain
 the ultimate facts or any allegations from which to infer those facts[.]” Id.
 When the trial court does not provide reasons for its dismissal, an
 appellate court will presume the dismissal was based on at least one of the
 grounds stated in the motion to dismiss. Fenlon v. Union Elec. Co., 266
 S.W.3d 852, 854 (Mo. App. 2008). We will affirm if the dismissal was
 appropriate on any ground stated in the motion. Id.

Siebert v. Peoples Bank, 632 S.W.3d 461, 466 (Mo.App. 2021).

 Discussion

 Point 2 – Section 610.120 Does Not Create a Private Cause of Action

 For ease of analysis, we consider Ryno’s points out of order and turn first to

Ryno’s second point relied on. In that point, Ryno contends that the allegations in his

petition state a claim for an “implied” right to damages for Hillman’s “per se” violation

of section 610.120 and argues that the trial court erred because it “misapplied the law” in

concluding that disclosure of closed records “in violation of section 610.120” did not

“give rise to a private cause of action.” The trial court was correct.

 The Western District of our Court rejected a similar argument in concluding that

section 610.027, RSMo 2016, did not provide a remedy for statutory damages for alleged

 3
violations of section 610.150, RSMo Cum.Supp. 2013, and section 610.100.2, RSMo

Cum.Supp. 2004. Cox v. City of Chillicothe, 575 S.W.3d 253 (Mo.App. 2019). By its

express terms, section 610.027 applies only to requirements and violations of “sections

610.010 to 610.026.” The plaintiff in Cox argued that “a party can recover damages for

the violation of section 610.150 or section 610.100.2 through application of section

610.021(14) which then allows recovery of damages pursuant to section 610.027.” Id. at

257. In rejecting this argument, the Western District held that section 610.021

 is a permissive statute that allows, but does not require, a governmental
 body to close certain meetings, records, and votes. . . .

 . . . While the Defendants may have been prohibited from
 disclosing the 911 Recording by application of sections 610.150 and
 610.100.2, to apply the penalty and damages provisions of section 610.027
 there must have been a violation of sections 610.010 through 610.026.
 Even were section 610.021(14) to be interpreted to incorporate sections
 610.150 and 610.100.2, the permissive nature of section 610.021 itself
 does not allow for a remedy to be sought for the improper disclosure of
 otherwise closed records under section 610.027.

Id. at 258. The Cox court then proceeded to conclude:

 Instead, a more appropriate reading of these sections of the
 Sunshine Law is that section 610.027 does not provide a remedy for
 violations of section 610.150 or 610.100.2. This interpretation is bolstered
 by looking to section 610.100.8[ 3] which provides specific penalties for
 the improper disclosure of some records. Subsection 8 states that any
 person who requests and receives a mobile video recording pursuant to
 section 610.100 is prohibited from displaying or disclosing the recording
 or any description or account thereof and expressly states that “[a]ny
 person who fails to comply with the provisions of this subsection is
 subject to damages in a civil action proceeding.” “It is well settled, in
 interpreting a statute, that the legislature is presumed to have acted
 intentionally when it includes language in one section of a statute, but
 omits it from another.” Denbow v. State, 309 S.W.3d 831, 835 (Mo. App.
 W.D. 2010) (quoting State v. Bass, 81 S.W.3d 595, 604 (Mo. App. W.D.
 2002)). By expressly including the right to civil damages for the improper
 disclosure of closed records in subsection 610.100.8 but not 610.100.2, the

3
 The alleged violations of 610.150 and 610.100.2 in Cox occurred in September 2014. Id at 255-56.
Subsection 8 of section 610.100 was enacted in 2016 and effective August 28, 2016.

 4
 legislature signaled an intent to not provide for civil damages for a
 violation of subsection 2 of the same section. This principle of statutory
 interpretation also applies to section 610.150 which similarly lacks any
 specific authorization for civil damages for the improper disclosure of an
 otherwise closed record.

Id.

 The same principle of statutory interpretation also applies to section 610.120,

RSMo Cum.Supp. 2003 and 2014, which does not expressly or specifically authorize a

private cause of action for damages. See also Fierstein v. DePaul Health Center, 949

S.W.2d 90, 93 (Mo.App. 1997) (in the context of a statute that provided certain health

information “shall be confidential,” stating “[b]ecause the statute does not expressly

provide for a private cause of action, we cannot imply that the legislature intended to do

so”).

 Our conclusion that section 610.120 does not authorize a private cause of action

for damages is further buttressed by section 610.115, RSMo 2000, which provides that

“[a] person who knowingly violates any provision of section 610.100, 610.105, 610.106,

or 610.120 is guilty of a class A misdemeanor.” A “statute which creates a criminal

offense and provides a penalty for its violation, will not be construed as creating a new

civil cause of action independently of the common law, unless such appears by express

terms or by clear implication to have been the legislative intent.” Christy v. Petrus, 295

S.W.2d 122, 126 (Mo. banc 1956); see also Zeller v. Scafe, 498 S.W.3d 846, 853-55

(Mo.App. 2016) (referencing Christy, and also noting “unexpressed civil liability will not

be implied by an expansion of criminal liability”); and Otte v. Edwards, 370 S.W.3d 898,

903 (Mo.App. 2012) (“‘In the absence of any indication of [a legislative] intent [to create

a civil cause of action based on a misdemeanor], we are “constrained to assume that had

 5
the legislature desired to provide for enforcement . . . by civil action, as well as by

criminal prosecution, such a provision would have been incorporated therein.”’ Lafferty

[v. Rhudy], 878 S.W.2d [833,] 835 [(Mo.App. 1994)], quoting Christy, 295 S.W.2d at

126.”); cf. Johnson v. Kraft General Foods, 885 S.W.2d 334, 336 (Mo. banc 1994)

(“when the legislature has established other means of enforcement, we will not recognize

a private civil action unless such appears by clear implication to have been the legislative

intent.” (internal quotation marks omitted)). As applicable here, the express terms of

section 610.120 do not support a legislative intent to create a private cause of action for

damages, and Ryno does not direct us to, and we are not independently aware of, any

evidence that clearly implies a legislative intent to do so.

 Ryno urges us to treat section 610.120 as a public safety statute that creates a

statutory duty or standard of care to which a reasonable person must conform his

conduct. “We recognize that a civil claim for relief may be based upon a criminal statute

if the person injured by the violation of the statute is a member of the class the statute

was enacted to protect, and if the purpose of the statute is to protect or promote public

safety.” Otte, 370 S.W.3d at 902.

 In the context of a statute that provided a “licensee acting as a seller’s or

landlord’s agent . . . shall disclose to any customer all adverse material facts actually

known or that should have been known by the licensee,” the Eastern District observed:

 The primary issue is whether [the statute] allows a private cause of
 action based on negligence per se. . . .

 . . . Negligence per se arises where the legislature pronounces in a
 statute what the conduct of a reasonable person must be, whether or not
 the common law would require similar conduct, Monteer v. Prospectors
 Lounge, Inc., 821 S.W.2d 898, 900 (Mo.App.1992), and the court then
 adopts the statutory standard of care to define the standard of conduct of

 6
 [a] reasonable person. RESTATEMENT TORTS (SECOND) sections
 286, 288 (1965). Negligence per se “is a form of ordinary negligence that
 results from the violation of a statute.” 57A AM. JUR. 2d Negligence
 section 727 (1989). As a result, the jury is instructed on the statutory
 standard of care rather than the care of the reasonable person. See
 Egenreither [v. Carter], 23 S.W.3d [641,] 643-45 [(Mo.App. 2000)].

 ....

 Before we reach the question of a violation, we must first examine
 the statute itself to determine if it is a statute on which negligence per se
 may be premised. As an initial matter, we observe that this statute falls
 outside the class of safety statutes on which negligence per se is ordinarily
 based. “Negligence per se is in effect a presumption that one who has
 violated a safety statute has violated his legal duty to use due care.” 57A
 AM. JUR. 2d Negligence section 727 (1989). The doctrine of negligence
 per se has traditionally arisen in cases involving personal injury and
 physical injury to property. Plaintiffs have not cited any Missouri case
 that has extended the negligence per se doctrine to cases which involve
 damage to economic interests. For various reasons, the courts of this state
 have not found professional and business licensing statutes to be a basis on
 which claims for negligence per se can be made. See Business Men’s
 Assurance Co. v. Graham, 891 S.W.2d 438, 455 (Mo.App. 1994);
 Imperial Premium Finance, Inc. v. Northland Ins. Co., 861 S.W.2d 596,
 599 (Mo.App. 1993); Gipson v. Slagle, 820 S.W.2d 595, 597 (Mo.App.
 1991). . . .

 The test to determine whether a violation of a statute may
 constitute negligence per se depends on legislative intent. 65 CJS
 Negligence Section 135; see Dix v. Motor Market, Inc., 540 S.W.2d 927,
 931 (Mo.App.1976). We do not find that [the statute] was intended to
 replace the standard of care in a negligence action.

Lowdermilk v. Vescovo Building and Realty Co., Inc., 91 S.W.3d 617, 628-29 (Mo.App.

2002).

 In this case, section 610.120 is not a public safety statute, does not purport to

describe what the conduct of a reasonable person must be, and does not evince any

legislative intent to replace the standard of care in a negligence action.

 Ryno’s second point is denied.

 7
 Points 1, 3, 6, 7, 8, 9 and 10 are Moot

 All of Ryno’s remaining points, except points 4 and 5 discussed infra, challenge

alternative grounds the trial court relied upon in dismissing Counts I-III and VI. Each of

these counts was premised upon an alleged statutory violation of section 610.120.

Because we have determined that section 610.120 does not create a private cause of

action for damages, Ryno’s first point (the trial court erred in holding that Hillman’s

disclosures to the Army were authorized under section 610.120), third point (the trial

court erred in holding a portion of Hillman’s disclosures were authorized by a judge’s

order), sixth point (the trial court erred in holding that Hillman’s disclosures were

“covered by the doctrine of quasi-judicial immunity”), seventh point (the trial court erred

in holding that Hillman’s disclosures were “covered by the doctrine of prosecutorial

immunity”), eighth point (the trial court erred in holding that Hillman’s disclosures were

“covered by the doctrine of official immunity”), ninth point (the trial court erred in

holding that Hillman’s disclosures were “covered by immunity under the public . . . duty

doctrine”), and tenth point (the trial court erred in holding Ryno’s “damage claims” were

not “ripe[]”) are moot and need not be addressed.

 Point 4 – Ryno Failed To Plead an Element of the Tort of Unreasonable Intrusion
 Upon the Seclusion of Another

 In Ryno’s fourth point, he appears to assert that the trial court erred in failing to

“address the privacy tort of unreasonable in[]trusion into private facts” in that Ryno’s

allegations “showed Hillman acted unreasonably” in “intruding into,” failing to

“remove,” and “disclosing” Ryno’s “privileged materials” (“tort of unreasonable

intrusion into the seclusion of another”). We deny this point because Ryno failed to

 8
plead ultimate facts supporting an element of the tort of unreasonable intrusion upon the

seclusion of another.

 The general right to privacy encompasses four separate privacy
 interests. St. Anthony’s Medical Center v. H.S.H., 974 S.W.2d 606, 609
 (Mo.App. 1998). Invasion of these privacy interests may result in four
 separate torts, each of which has its own distinct set of elements. Id. The
 right to privacy is breached when there is: (1) an unreasonable intrusion
 upon the seclusion of another; (2) the appropriation of the name or
 likeness of another; (3) unreasonable publicity given to another’s private
 life; or (4) publicity that unreasonably places another in a false light before
 the public. Id.

 Although Appellants’ petition does not specify which of the
 privacy interests they contend were invaded, in their brief they argue that
 they made a submissible case under “an intrusion upon seclusion” theory.
 “Three elements encompass the claim for unreasonable intrusion upon the
 seclusion of another: (1) the existence of a secret and private subject
 matter; (2) a right in the plaintiff to keep that subject matter private; and
 (3) the obtaining by the defendant of information about that subject matter
 through unreasonable means.” Id.

Crow v. Crawford & Co., 259 S.W.3d 104, 120 (Mo.App. 2008).

 As relevant to this point and related to the means by which Hillman obtained

Ryno’s information, Ryno alleged the following facts in the petition. Law enforcement

officers arrested him on October 30, 2014, “based upon their claims to have witnessed

[him] committing a crime or crimes, while they were conducting surveillance of him.”

“At the time of the arrest,” the “officers seized Plaintiff’s personal lap top computer and

subsequently obtained a search warrant to download an exact copy of all contents of the

computer.” “Hillman filed felony criminal charges against Plaintiff” on October 31,

2014.

 12. Contents of Plaintiff’s computer were, in whole or in part,
 provided to Hillman, along with photos and videos from Plaintiff’s
 cameras and cell phones, and texts from his cell phones, files from
 external drives, and various other items belonging to Plaintiff, including
 attorney-client items from said laptop.

 9
 13. At that time, Plaintiff was still the [a]ppellant in the MSPB
 civil case against the Department of the Army, for wrongful removal from
 federal service.

 14. The files from Plaintiff’s lap top computer included thousands
 of files that were directly or indirectly related to the MSPB case and
 [Plaintiff’s prior] misdemeanor case, with hundreds of these files having
 been shared with or discussed with attorneys who had represented or were
 representing Plaintiff in various related legal cases. . . .

 15. Some of these files included detailed analyses of the issues in
 the MSPB case and detailed strategies for the case. They included
 Plaintiff’s thoughts and counsel’s thoughts on potential litigation tactics
 and strategies to pursue, and his assessment of strengths and weaknesses
 of the case, as well as such documents that applied to other, related cases. .
 ..

 16. The files from Plaintiff’s lap top computer were part of the
 police investigative file [for the felony case]. . . .

 Based upon these allegations, law enforcement officers obtained Ryno’s allegedly

privileged material from Ryno’s computer pursuant to a search warrant executed in the

course of investigating the crime or crimes for which he was arrested on October 30,

2014, and law enforcement subsequently provided that information to Hillman for use in

the prosecution of the felony charges filed on October 31, 2014. According to the

allegations in Ryno’s petition, therefore, Hillman legitimately obtained this information

from law enforcement for use in the investigation and prosecution of the October 31

felony charges, not through any unreasonable means. Hillman’s alleged subsequent use,

failure to remove and disclosure of the allegedly privileged material are unavailing,

because, even if Ryno’s allegations are true, they do not establish or support a reasonable

inference that Hillman obtained the allegedly privileged material through unreasonable

means. In the absence of factual allegations supporting that element, the trial court did

 10
not err in failing to address the tort of unreasonable intrusion upon the seclusion of

another when dismissing Count IV of the petition.

 Ryno’s fourth point is denied.

 Point 5 – Ryno Failed To Plead Facts Supporting All Elements of a Prima Facie Tort

 In his fifth point relied on, Ryno contends that the trial court “erred in holding

Ryno’s allegations did not meet one or more of the elements required to prove a ‘prima

facie tort’” under Count V of the petition. Ryno’s contention is incorrect.

 In Missouri, the elements of a prima facie tort are: “(1) an intentional lawful act

by defendant; (2) defendant’s intent to injure the plaintiff; (3) injury to the plaintiff; and

(4) an absence of or insufficient justification for defendant’s act.” Nazeri v. Missouri

Valley College, 860 S.W.2d 303, 315 (Mo. banc 1993). “Missouri courts, while

recognizing prima facie torts at least nominally, do not look upon them with favor and

have consistently limited the application of the prima facie tort.” Hertz Corp. v. RAKS

Hospitality, Inc., 196 S.W.3d 536, 549 (Mo.App. 2006); see also Catron v. Columbia

Mutual Ins. Co., 723 S.W.2d 5, 6 (Mo. banc 1987) (“Missouri courts have consistently

limited the application of the prima facie tort. They have expressed a concern that this

cause of action would be used in every situation in which an injury or loss occurred and

no other tort applied.” (citations omitted)).

 In Nazeri, our Supreme Court observed:

 Appellant here, as many others before her, misunderstands the
 nature of a prima facie tort claim. It is not a duplicative remedy for claims
 that can be sounded in other traditionally recognized tort theories, or a
 catchall remedy of last resort for claims that are not otherwise salvageable
 under traditional causes of action. Instead, it is a particular and limited
 theory of recovery with specific elements, as any other tort. . . .

 ....

 11
 In short, prima facie tort is not a duplicative cause of action
 established either by the failure to prove a recognized tort claim, or by the
 failure of such a claim on account of a particular defense. . . .

Nazeri, 860 S.W.2d at 315. The Supreme Court also noted:

 Missouri decisions indicate that care should be exercised when weeding
 out improperly pleaded alternative counts of prima facie tort. Normally,
 this would be done at the submission of the case to the jury. Bandag [of
 Springfield, Inc., v. Bandag, Inc.], 662 S.W.2d [546,] 554
 [(Mo.App.1983)]. However, when it is clear that the theory is being
 asserted merely to circumvent an established body of law, or when it is not
 supported by the pleading of the factual elements giving rise to the claim,
 the prima facie count may be dismissed earlier.

Id. at 316 n.9 (citations omitted except Bandag); see also 315 n.8.

 Thereafter, the Western District of our Court ruled “a party cannot resort to prima

facie tort merely to overcome an inability to prove one element of a nominate tort,”

Thomas v. Special Olympics Missouri, Inc., 31 S.W.3d 442, 444 (Mo.App. 2000), and

stated:

 Mr. Thomas also asserts a claim of prima facie tort against Special
 Olympics based on the same conduct which he alleged allowed him to
 assert that Special Olympics committed the tort of intentional infliction of
 emotional distress against him. A claim of prima facie tort requires proof
 of: (1) an intentional lawful act by the defendant, (2) defendant’s intent to
 injure the plaintiff, (3) injury to the plaintiff, and (4) an absence of, or
 insufficient justification for defendant’s act. Woolsey v. Bank of
 Versailles, 951 S.W.2d 662, 668 (Mo.App. W.D. 1997). In addition, as
 we have recognized in prior cases, the nature of this tort is sufficiently
 ambiguous and open-ended that a plaintiff should not be permitted to sue
 under it for conduct which is encompassed within an existing, nominate
 tort. Id. And, as the Eastern District of this Court explained in Kiphart v.
 Community Federal Sav. & Loan Ass’n, 729 S.W.2d 510 (Mo.App. E.D.
 1987), “[t]he availability of a nominate tort does not mean that the
 plaintiff may be successful and actually recover damages under that
 theory, but means that the prima facie tort doctrine cannot be utilized
 when such a tort is available.” Id. at 517–18. In other words, this doctrine
 cannot be used to avoid the inability to prove one element of a nominate
 tort that is otherwise applicable under the facts.

 12
 For example, in Woolsey, plaintiffs sued under two theories:
 wrongful foreclosure and prima facie tort. The conduct which they
 alleged supported their wrongful foreclosure claim was substantially
 identical to the conduct they alleged supported their prima facie tort claim.
 Plaintiffs lost on their theory of wrongful foreclosure, and the court did
 not permit them to proceed on their claim of prima facie tort. On appeal,
 plaintiffs asserted that they should have been permitted to submit their
 prima facie tort claim. Woolsey disagreed, holding that, where, as there,
 the same facts underlay both theories, the doctrine of prima facie tort
 could not be invoked, for it “is not a duplicative remedy for claims that
 can be sounded in other traditionally recognized tort theories.... As such,
 the prima facie tort doctrine cannot be utilized when a recognized tort is
 otherwise available.” 951 S.W.2d at 668.

Id. at 449-50; see also Hertz Corp., 196 S.W.3d at 549 (citing Thomas, and stating

“prima facie tort cannot be used when a recognized, nominate tort is otherwise available”

and “[t]he doctrine of prima facie tort cannot be utilized to avoid an inability to prove one

element of a nominate tort that is otherwise applicable under the facts”).

 In the petition here, Ryno alleged Hillman made unauthorized disclosures of

closed law enforcement records (including privileged records) in violation of section

610.120 to the Department of the Army in the course of the Army’s administrative

investigation and termination of Ryno’s federal employment. Ryno further alleged the

same disclosures also constituted the torts of (1) unreasonable publicity given to

another’s private life, (2) an unreasonable intrusion upon the seclusion of another, and (3)

prima facie tort.

 With regard to the tort of unreasonable publicity given to another’s private life,

Ryno does not challenge on appeal the trial court’s conclusion that Ryno did not plead

sufficient facts to establish the element of publication. In our discussion of Ryno’s fourth

point related to the tort of unreasonable intrusion upon the seclusion of another, supra,

we concluded that he did not plead sufficient facts to establish the element that the

 13
privileged records were obtained by Hillman through unreasonable means. Although

Ryno was unable to plead facts that established an element of these two nominate torts,

these torts were available to Ryno within the meaning as described in Thomas. As a

result, a prima facie tort claim was not available to Ryno based upon the same alleged

facts, and the trial court properly dismissed the prima facie tort claim.

 Moreover, Ryno failed to state a claim for a prima facie tort because he failed to

plead sufficient facts to establish at least two of the elements of a prima facie tort – (1) an

intentional lawful act by defendant and (2) an absence of or insufficient justification for

defendant’s act.

 In affirming the dismissal of an alleged prima facie tort in Nazeri, the Supreme

Court noted:

 Appellant’s third count is sounded in prima facie tort. This count
 incorporates the allegations contained in the prior two slander counts, and
 avers that if appellant has “not stated a claim under her other Counts then
 Defendant’s actions were lawful and done under proper authority.” . . .

 ....

 A careful reading of appellant’s Count III indicates that she has not
 pleaded facts that establish the above elements [of a prima facie tort],
 either as to the allegations incorporated from the prior two counts or as to
 the newly alleged statements. Counts I and II alleged defamation, an
 injury to appellant on account of specific untrue statements. Recovery for
 untrue statements should be in defamation. At no point does appellant
 allege, even in the alternative, that the complained of statements are true.
 The mere conclusory allegation that appellant might not have “stated a
 claim under her other counts” does not necessarily establish the
 subsequent conclusory allegation that respondent’s actions “were lawful
 and done under proper authority.” Neither do these two allegations
 together state facts establishing the requisite elements of a prima facie tort
 claim.

Nazeri, 860 S.W.2d at 315 (citations omitted). In this case, the crux of Ryno’s

complaints is that Hillman made unauthorized disclosures of closed law enforcement

 14
records (including privileged records) to the Army in violation of section 610.120. In his

count for a prima facie tort, Ryno never alleges that these disclosures in fact were

authorized under section 610.120, and affirmatively alleged to the contrary that “[t]he

[Office of the Staff Judge Advocate for the Army] did not meet any exception in RSMO

610.120.” At the very beginning of the count, Ryno does allege “[c]omes now Plaintiff, .

. . in the alternative that the Court does not find that the actions of Defendant as set out

hereinabove in Count II were illegal, states . . . ;” and toward the end of the count “[i]n

the event that Hillman successfully claims that it was not contrary to the law for Hillman

to release the closed police reports, this action by him constitutes a prima facie tort.” As

in Nazeri, neither of these latter conclusory allegations (i.e., (1) in the alternative that the

Court does not find Defendant’s actions “illegal,” and (2) in the event Hillman

successfully claims that it was not “contrary to the law” to release the closed police

reports) necessarily establish that Hillman’s alleged release of closed law enforcement

records was in fact authorized under section 610.120. As a result, Ryno did not plead

facts that establish an intentional lawful act by defendant.

 Further, beyond the conclusory allegations (1) Hillman “had no justification for

doing so” (i.e., “releasing the closed police reports”), (2) Hillman “had no justification in

taking this action[,]” and (3) Hillman “had no or an insufficient justification for his

actions[,]” Ryno did not plead any facts to establish, or support a reasonable inference of,

an absence of or insufficient justification for Hillman’s disclosure of the closed law

enforcement records. As we recently observed:

 We . . . disregard conclusory allegations of fact and legal
 conclusions, neither of which can be considered by an appellate court in
 determining whether a petition states a claim upon which relief can be
 granted. See Hall v. Podleski, 355 S.W.3d 570, 578 (Mo. App. 2011). A

 15
 motion to dismiss is properly granted when a petition “does not contain
 the ultimate facts or any allegations from which to infer those facts[.]” Id.

Siebert, 632 S.W.3d at 466. This failure to plead ultimate facts is important. If Ryno

properly had pleaded facts supporting his claim that the challenged disclosures were

authorized under section 610.120, an obvious and sufficient justification for the

disclosure would have been Missouri’s public policy that “records” of “public

governmental bodies be open to the public unless otherwise provided by law.” Section

610.011.1, RSMo Cum.Supp. 2004 (“It is the public policy of this state that meetings,

records, votes, actions, and deliberations of public governmental bodies be open to the

public unless otherwise provided by law. Sections 610.010 to 610.200 shall be liberally

construed and their exceptions strictly construed to promote this public policy.”).

 Ryno’s fifth point is denied.

 Decision

 The trial court’s judgment is affirmed.

GARY W. LYNCH, C.J. – OPINION AUTHOR

MARY W. SHEFFIELD, P.J. – CONCURS

DON E. BURRELL, J. – CONCURS

 16